Ronald KASSOVER, individually and on behalf of other shareholders of Computer Depot, Inc., similarly situated, Plaintiff,

v.

COMPUTER DEPOT, INC., Stephen B. Parker, Frederick S. Larson, Paul J. Larson, George R.A. Johnson, Erik T. Rossing, Thomas M. Claflin, II, David M. Ehlen, Bruce L. Burnham, Richard W. McEwen, Kidder, Peabody & Co., and Dain Bosworth, Inc., Defendants.

No. 3–86 CIV 586.

United States District Court,
D. Minnesota,
Third Division.

April 27, 1987.

Schoengold and Sporn, P.C. by Samuel P. Sporn, New York City, and Zimmerman and Reed by Charles S. Zimmerman, Minneapolis, Minn., for plaintiff.

Kirkland and Ellis by Robert E. Shapiro, Chicago, Ill., and Dorsey and Whitney by Jeffrey L. Sikkema, Minneapolis, Minn., for defendants Kidder, Peabody & Co. and Dain Bosworth, Inc.

Lindquist and Vennum by Richard B. Solum and Ann M. Parrent, Minneapolis, Minn., for the individual defendants.

Mackall, Crounse and Moore by Thomas J. Lallier, Minneapolis, Minn., for defendant Computer Depot, Inc.

## ORDER

ALSOP, Chief Judge.

This matter came before the undersigned on February 27, 1987, upon a number of motions. Defendants Stephen B. Parker, Frederick S. Larson, George R.A. Johnson, Thomas M. Claflin, II, David M. Ehlen, Bruce L. Burnham, and Richard W. McEwen (the "individual defendants") and defendants Kidder, Peabody & Co. and Dain Bosworth, Inc. (the "underwriter defendants") move for summary judgment or for an undertaking pursuant to § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e). Defendant Computer Depot, Inc. ("CDI") moves the court to dismiss the plaintiff's claims as against CDI on the ground that the action was commenced against CDI in violation of the automatic stay imposed by 11 U.S.C. § 362 and therefore is void. Plaintiff moves the court to certify both a plaintiff class and a defendant class in this action. Finally, plaintiff moves the court

for an order permitting Robert D. Phillips to intervene as a plaintiff in this action, continuing pending motions, and permitting filing of an Amended Class Action Complaint.

At the hearing held February 27, 1987, the court granted CDI's motion to dismiss and ordered plaintiff's attorneys, and not plaintiff personally, to pay CDI's attorney's fees incurred in connection with bringing CDI's motion to dismiss. *See* 28 U.S.C. § 1927; Fed.R.Civ.P. 11, 37. The court invited counsel for CDI to file an affidavit detailing the time expended in responding to plaintiff's complaint. The court took all other motions under advisement.

## FACTS

CDI is a Minnesota corporation which sells personal computer systems, software, and related products and services through leased computer centers located in major department stores. Personal computers are those microcomputer systems that are capable of various business and personal applications such as spreadsheet analysis, graphics, and word processing. They are distinct from home computers which are used predominately for entertainment and games. Price also distinguishes personal computers from home computers; in 1984, personal computers sold for $1,000.00 to $6,000.00 while home computers typically sold for less than $1,000.00.

CDI began operations in March 1981 with one leased computer center located in a Dayton's department store. CDI experienced rapid growth as the demand for personal computers underwent a dramatic and well-publicized expansion. As of July 12, 1984, CDI was operating forty-one computer centers in fifteen states and the District of Columbia. To finance further expansion, CDI commenced an initial public offering of 875,000 of common stock at a price of $10.00 per share. CDI retained the underwriter defendants as representatives of a group of fifty-seven underwriters who were to assist in the offering. This offering, made pursuant to a registration statement and prospectus effective July 21, 1984, was withdrawn on June 27, 1984, due to a reduction in price of IBM products which resulted in a reduction of CDI's gross margins on sales of existing inventories of such products. The original registration statement and prospectus were amended by a July 12, 1984, registration statement and prospectus to reflect the impact of reduction on income, and a resultant price per share reduction from $10.00 to $9.00. The amended registration statement and prospectus also increased the number of shares offered to 1,000,000. It is this amended registration statement and prospectus that is the subject of plaintiff's allegations.

Plaintiff identifies three statements contained in the prospectus that he asserts were materially false and misleading. The prospectus stated "the Company believes that a new computer center generally can achieve profitability ... within a relatively short period of time after it opens." The prospectus also stated "the Company believes that it is able to remain price competitive due to its large volume of purchases which permits it to take advantage of high levels of price discounts." Finally, the prospectus stated "[s]ubject to obtaining financing and to the other considerations relating to opening new stores, the Company presently plans to open approximately ninety new computer centers in calendar 1985."

In fact, CDI was unable either to expand at the rate projected in the prospectus or to remain price competitive over the next eighteen months. Instead, the retail market for personal computers grew increasingly competitive, leading to what numerous newspaper and magazine articles published between November 1983 and October 1984 described as a "shake-out" in the personal computer market. As a result of this intensifying competition, CDI was not able to open ninety new stores in calendar 1985, although the corporation did expand from forty-one stores at the time of the offering to eighty stores at the end of its fiscal year, which was February 2, 1985. During the first quarter of fiscal 1985, CDI experienced the effect of a softening and recession in the market for personal com-

puters. Prices of products, and accordingly gross margins, declined. As a result, CDI experienced a net loss for this quarter, and was able to open only two new stores. These facts and an express reference to the "softening" of CDI's market were disclosed in CDI's Form 10–Q for the quarter ended May 4, 1985, and this Form 10–Q was filed with the Securities and Exchange Commission June 18, 1985.

Despite increased sales in the second and third quarters of 1985, CDI continued to lose money as demand, revenue per store, and prices declined while expenditures remained fixed at a high level due to earlier expansion. The personal computer market, and CDI's place in it, continued to deteriorate in the last quarter of 1985 and in mid-December 1985 CDI's principal banks notified CDI that they were imposing severe restrictions on CDI's borrowing under its discretionary lines of credit. On December 19, 1985, CDI filed a petition under Chapter 11-of the United States Bankruptcy Code.

Plaintiff Ronald Kassover, a frequent securities class action plaintiff, acquired 200 shares of CDI stock in the July 1984 offering at a price of $9.00 per share. After learning from various newspaper articles of a "softening in demand" for personal computers and of a "shake-out" in the retail market for personal computers, Kassover lost confidence in CDI and on March 21, 1985, decided to sell his shares at $7.50 per share. Thus Kassover sustained a total loss of $300.00. On June 25, 1986, plaintiff brought this action in four counts. Count I alleges that CDI, the individual defendants, who are directors of CDI, and the underwriter defendants violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Count II alleges that CDI, the individual defendants, and the underwriter defendants violated § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). Count III alleges that CDI and the individual defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5. Finally, Count IV alleges a claim based upon common law fraud against CDI and the individual defendants.

The individual and underwriter defendants took Kassover's deposition on December 9, 1986. Kassover acknowledged then that he had learned of a shake-out in the personal computer market by the late fall of 1984. In fact, Kassover began reading articles on the "softening" in the market and its industry-wide effects, and continued to do so even after he sold his stock in March 1985. Kassover also repeatedly acknowledged that he had "no facts" or "no proof" or no evidence to support many of his claims. Indeed, when pressed for the basis of his belief that any defendant had or should have had foreknowledge of the operational effects of the industry shake-out, he repeated that he had none, but "wouldn't mind going into their records to find out how much amount [sic] the units per store, etc., etc., what was selling, what wasn't."

## DISCUSSION

I. Plaintiff's Motion to Permit Intervention, to Permit Service of an Amended Complaint, and to Continue Pending Motions.

Plaintiff moves the court for an order pursuant to Fed.R.Civ.P. 24(b) permitting Robert D. Phillips to intervene as an additional party plaintiff in this action, for an order permitting service of an amended complaint, and to continue all pending motions for forty-five days.

In determining whether permissive intervention should be allowed, the threshold question is whether a timely application has been filed. Fed.R.Civ.P. 24(b). The decision as to timeliness is committed to the district court's discretion. *NAAPC v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *Arkansas Electric Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 403 (8th Cir.1985). Although the issue is determined from all the circumstances, 413 U.S. at 366, 93 S.Ct. at 2603, three factors receive particular attention: "how far the proceedings have gone when the movant seeks to intervene, prejudice which resultant delay might cause to other

parties, and the reason for the delay." 772 F.2d at 403; *Nevilles v. Equal Employment Opportunity Commission,* 511 F.2d 303, 305 (8th Cir.1975).

■ Permitting Phillips to intervene in this action will result in both prejudice and undue delay. Defendants have undertaken substantial discovery focusing on plaintiff Ronald Kassover in preparation for their summary judgment motion. Plaintiff's motion to permit Phillips' intervention at this juncture is a transparent response to the imminent success of this very effort. Allowing intervention under these circumstances would be grossly unfair to the defendants. Beyond the desire to shore up a crumbling lawsuit, plaintiff offers no further justification for a forty-five day continuance. Accordingly, plaintiff's motion for an order permitting Robert D. Phillips' intervention as an additional party plaintiff, permitting service of an amended complaint, and continuing the pending motions will be denied.

II. Summary Judgment.

■ The standards governing summary judgment are well established. Under Fed. R.Civ.P. 56(c), the district court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Eighth Circuit Court of Appeals has emphasized the drastic nature of the summary judgment remedy, finding it appropriate only if the "the moving party has established his right to a judgment with such clarity as to leave no room for controversy and the non-moving party is not entitled to recover under any discernible circumstances." *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983), *quoting Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir.1979). All evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The court must give the non-moving party the benefit of all reasonable inferences to be drawn from the underlying facts. *Glass v. Allis Chalmers Corp.,* 789 F.2d 612, 613 (8th Cir.1986).

### A. Counts I and II

Count I of plaintiff's complaint alleges all defendants violated § 11 of the Securities Act of 1933. Section 11 imposes civil liability upon five specific classes of persons in connection with any registration statement which contains an untrue statement of material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading. Count II of plaintiff's complaint alleges all defendants violated § 12(2) of the Securities Act of 1933. Section 12(2) imposes civil liability upon any person who offers or sells a security by means of a prospectus or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements not misleading.

■ Defendants contend plaintiff's claims with respect to §§ 11 and 12(2) are barred by § 13 of the Securities Act of 1933, which provides in part that "[n]o action shall be maintained to enforce any liability created under § 11 or § 12(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence,...." 15 U.S.C. § 77m. Plaintiff's compliance with § 13 in this action depends upon what he knew or should have known on June 25, 1985, one year prior to commencement of this action. Reasonable diligence for purposes of § 13 is tested by an objective standard. *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982); *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1130 (4th Cir.1970). The burden of showing compliance with § 13 rests upon plaintiffs. *Cook v. Avien, Inc.,* 573 F.2d 685, 695 (1st Cir.1978) (Lay, J.).

■ Normally, reasonable diligence is a jury issue. *Hutton*, 422 F.2d at 1131. When no genuine issue of material fact exists, however, as to whether the plaintiff had actual or constructive knowledge of the alleged misrepresentations or omissions prior to one year before the commencement of an action based upon § 11 or § 12(2), summary judgment is appropriate. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 692–93 (8th Cir. 1981); *Cook*, 573 F.2d at 697; *Intre Sport Ltd. v. Kidder, Peabody & Co., Inc.*, 625 F.Supp. 1303, 1310–11 (S.D.N.Y.1985). Summary judgment concerning reasonable diligence in a statute of limitations context need not await completion of discovery by plaintiff because plaintiff is the only party who possesses information sufficient to counter the inferences of a lack of due diligence that may be found in the plaintiff's deposition. *Gieringer v. Silverman*, 731 F.2d 1272, 1278 (7th Cir.1984).

■ Paragraphs 34 and 35 of plaintiff's complaint contain the sum and substance of plaintiff's allegations as to the misrepresentations and omissions upon which plaintiff bases his § 11 and § 12(2) claims. Paragraph 34 alleges defendants "knew, or should have known, that a shake-out in the personal computer market was then occurring and that due to a general slump in the personal computer industry, manifested by substantial price slashing and the closing of retail stores of major competitors" CDI's new stores would not achieve profitability within a short period of time, CDI would not be able to "remain price competitive," and CDI would not be able to achieve sufficient growth to enable it to open ninety new computer centers in 1985. Paragraph 35 alleges four separate omissions of material fact. Plaintiff alleges defendants failed to disclose "rapidly changing material adverse circumstances of the personal computer market" which had caused a shake-out in that market. Plaintiff also alleges defendants "failed to adequately disclose negative effects of personal computer price decreases," and that defendants failed to disclose that opening new stores would cause CDI's bankruptcy. Finally, plaintiff alleges that defendants

failed to disclose the existence of intense competition in the personal computer market.

Even viewed in the light most favorable to the plaintiff, the record in this case demonstrates that virtually all of the information described in paragraphs 34 and 35 of plaintiff's complaint was available to the plaintiff before June 25, 1985. CDI filed Securities and Exchange Commission Form 10–Q for the first quarter of fiscal 1985 on or about June 18, 1985. This document described a "softening" in the personal computer market. Between November 1983 and October 1984, the existence of intense competition and a resulting "shake-out" in the personal computer retail sales market was widely reported in the financial press. *See, e.g.*, Wall St. J., Oct. 9, 1984, at 6; New Y. Times, Oct. 2, 1984, at D1; Barrons, Nov. 21, 1983, at 15. *See also Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 414 n. 8 (N.D.Ill.1984) (newspaper articles are admissible nonhearsay when submitted to prove that information contained therein was available to the public). CDI publicized the effect of IBM's personal computer price decreases when it withdrew its initial public offering on June 27, 1984. The withdrawal of this offering and its relationship to IBM's price decrease was reported in the Wall Street Journal on June 27, 1984. The negative effect of IBM's price decrease on the retail market for personal computers in general was reported in the Wall Street Journal on October 9, 1984.

In light of the availability of this information, no genuine issue of material fact exists as to whether prior to June 25, 1985, plaintiff knew of, or by the exercise of reasonable diligence could have discovered, the existence of every misrepresentation or omission pleaded in paragraphs 34 and 35 of his complaint except one: the alleged failure to disclose that expansion would cause CDI's bankruptcy. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 692–93 (8th Cir.1981); *Cook v. Avien*, 573 F.2d 685, 697 (1st Cir. 1978); *Intre Sport Ltd. v. Kidder, Pea-*

**1212**

body & Co., Inc., 625 F.Supp. 1303, 1311 (S.D.N.Y.1985).

Defendants' alleged failure to disclose that expansion would cause CDI's bankruptcy lies so clearly within the realm of speculation as to trigger no duty of disclosure. See, e.g., Flamm v. Eberstadt, 814 F.2d 1169 (7th Cir.1987) (no duty to disclose merger negotiations which have not yet established price and structure of proposed merger); Walker v. Action Industries, Inc., 802 F.2d 703, 710 (4th Cir.1986) (Rule 10b–5 did not require disclosure of financial projections and actual orders and sales for the year following tender offer and press release), cert. denied, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987); Starkman v. Marathon Oil Co., 772 F.2d 231, 241–42 (6th Cir.1985) (under Rule 10b–5, "soft information" such as projections based on future economic and corporate events must be disclosed only if the predictions underlying the projections are reasonably certain to hold), cert. denied, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986). See also Alton Box Board Co. v. Goldman, Sachs & Co., 560 F.2d 916, 919–20 (8th Cir.1977) (test of materiality under § 12(2) is the same as the general standard of materiality set forth by the Supreme Court in TSC Industries, Inc. v. Northway, Inc. 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). Therefore, the court will grant defendants' motion for summary judgment with respect to Counts I and II of plaintiff's complaint.[1]

**B. Counts III and IV**

Count III of plaintiff's complaint alleges the individual defendant directors violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities Exchange Commission. Count IV of plaintiff's complaint alleges the individual defendant directors are liable to plaintiff on a common law fraud theory. The defendant directors concede the statute of limitations defense applicable to Counts I and II of this action does not bar plaintiff's Counts III and IV.

Plaintiff argued at the hearing held February 27, 1987, that summary judgment was inappropriate at this juncture because plaintiff was not alerted to defendants' summary judgment motion with respect to Counts III and IV until the day of the hearing, and therefore conducted no discovery with respect to these counts. The defendant directors' motion, however, seeks summary judgment and dismissal of plaintiff's complaint "in its entirety." Despite the fact that plaintiff was fully apprised of defendants' intention to seek summary judgment with respect to Counts III and IV, the court nevertheless agrees that the time for discovery as to these counts has not been adequate to permit summary judgment at this point. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the defendant directors' motion for summary judgment with respect to Counts III and IV of plaintiff's complaint will respectfully be denied.

**III. Plaintiff's Motion to Certify a Plaintiff Class.**

Plaintiff seeks an order determining that this action shall be maintained by the plaintiff, Ronald Kassover, as a class action on behalf of:

himself and representatively on behalf of all other persons and entities who purchased common stock of Computer Depot, Inc. pursuant to the public offering which commenced on or about July 12, 1984, or on the public aftermarket during the period July 12, 1984, through December 18, 1985, inclusive (the "Class Period") and were damaged thereby.

This class is to exclude the defendants and persons acting in concert with them, members of the immediate families of the individual defendants, their affiliates, and any entity in which any of the defendants has or had a controlling interest.

The court notes at the outset that this court's decision to dismiss plaintiff's action with respect to plaintiff's § 11 and § 12(2) claims renders plaintiff by defini-

---

1. In view of the court's decision to grant summary judgment with respect to Count I of plain- tiff's complaint, defendants' motion for an undertaking as authorized by § 11(e) is moot.

tion an inadequate class representative as to these claims. Plaintiff now has no interest in pursuing these claims, and cannot be expected to adequately represent other members of the class in pursuing these claims. *See La Mar v. H & B Novelty and Loan Co.*, 489 F.2d 461, 466 (9th Cir.1973); Fed.R.Civ.P. 23(a)(4). Thus the court will address plaintiff's motion to certify a plaintiff class only with respect to plaintiff's claims based upon § 10(b) and Rule 10b–5, and common law fraud.

In order to proceed with a class action, plaintiff must first meet the four requirements of Fed.R.Civ.P. 23(a), which are that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claim or defenses of the class, and (4), the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must then prove that his action falls within one of three categories listed in Rule 23(b). Plaintiff seeks to certify under Rule 23(b)(3), which provides that an action may proceed as a class action if:

(3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■■■■ The district court is given broad discretion to determine the maintainability and the conduct of class actions. *See, e.g., Vervaecke v. Chiles, Heider & Co., Inc.*, 578 F.2d 713, 719 (8th Cir.1978); *In re Cessna Aircraft Distributorship Antitrust Litigation*, 518 F.2d 213, 215 (8th Cir.) *cert. denied*, 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975). When exercising this discretion, this court is mindful that the class action device is a necessary vehicle for the vindication of small claims, especially when the nature of the claim involves complex litigation. *See, e.g., Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 347 (D. Minn.

1971); *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 291 (S.D.N.Y.1969). Nevertheless, Rule 23 is designed as an instrument of convenience, and should not be permitted to impose an unjustified burden upon judicial resources. *See Elster v. Alexander*, 76 F.R.D. 440, 443 (N.D.Ga.1977), *appeal dismissed*, 608 F.2d 196 (5th Cir.1979); *Schaffner v. Chemical Bank*, 339 F.Supp. 329, 337 (S.D.N.Y.1972). The burden of proof is on the plaintiff to demonstrate that all requirements for certification have been met, and that certification in this case would not be an abuse of the class action device. *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 887 (D.N.J.1984).

■■■■ Common issues of fact do not predominate in this action with respect to plaintiff's state law fraud claims because these claims would have to be tried in accordance with the substantive law of the state of each class member. The court could not apply Minnesota's fraud law to the claims of all class members in this action. *In re Control Data Corporation Securities Litigation*, 116 F.R.D. 216, 223 (D.Minn.1986); *see Zandman v. Joseph*, 102 F.R.D. 924, 929 (N.D.Ind.1984); *Greenwald v. Integrated Energy, Inc.*, 102 F.R.D. 65, 71 (S.D.Tex.1984). Therefore, plaintiff's motion to certify a plaintiff class with respect to plaintiff's common law claims will be denied.

■■■■ The court also will deny plaintiff's motion with respect to plaintiff's § 10(b) and Rule 10b–5 claims because plaintiff would be an inadequate class representative and because a class action would not be a superior method of adjudicating this controversy. A plaintiff subject to unique defenses, especially as to his credibility and his demonstrated lack of familiarity with the suit, is an inadequate class representative. *Darvin v. International Harvester Co.*, 610 F.Supp. 255, 256 (S.D.N.Y.1985); *see, e.g., Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 186 (N.D.Ill.1980); *Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y.1978). Plaintiff's deposition in this case reveals that plaintiff is unfamiliar with several critical aspects of this litiga-

tion. Indeed, plaintiff admitted at several points he possesses "no facts" to support essential allegations in his complaint. In addition, rather than competently controlling the course of the litigation, plaintiff has contented himself to rely entirely upon his attorney's direction. Plaintiff's abdication of his responsibility for direction of this action creates an unacceptable possibility of conflict of interest. *See In re Gold Chip Funding Co.*, 61 F.R.D. 592, 594–95 (M.D.Pa.1974). Therefore, the court concludes that Ronald Kassover would be an inadequate representative of the proposed class.

■ The court also concludes that a class action is not a superior method of adjudicating the controversy now before it. *See* Fed.R.Civ.P. 23(b)(3). Because the court has declined to certify class with respect to plaintiff's common law fraud claims, class certification with respect to the 10b–5 claims could expand, rather than consolidate, the litigation. *See Elster v. Alexander*, 76 F.R.D. 440, 443 (N.D.Ga. 1977), *appeal dismissed*, 608 F.2d 196 (5th Cir.1979). The court is also troubled by the absence of actions brought by other shareholders of CDI. *See id.* To this court's knowledge, no shareholder other than Ronald Kassover initiated an action against CDI until Robert Phillips appeared, seeking to buoy Kassover's foundering lawsuit. The transparently *in terrorem* purpose of plaintiff's class certification effort renders the class action device a distinctly inferior method of adjudicating this controversy. *See Schaffner v. Chemical Bank*, 339 F.Supp. 329, 337 (S.D.N.Y.1972). Therefore, the court will deny plaintiff's motion to certify a plaintiff class in this action.

### IV. Defendant Class.

■ Having declined to certify a plaintiff class, the court perceives no utility in certifying a defendant class, because there appears to be no controversy between plaintiff Kassover and any member of the putative defendant class except Kidder, Peabody & Co., the firm through which Kassover purchased his CDI shares.

Therefore, plaintiff's motion to certify a defendant class will be denied.

### V. Attorney's Fees.

■ On December 18, 1985, CDI filed its petition for relief under Chapter 11 of the United States Bankruptcy Code. On June 25, 1986, more than six months after CDI filed its bankruptcy petition, plaintiff commenced this action naming CDI and various individuals and underwriters as defendants. Thus this action was commenced against CDI in contravention of Title 11, United States Code § 362(a), which provides in part that a

> petition filed under § 301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other actual proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

Therefore, the court granted CDI's motion to dismiss plaintiff's cause of action against CDI, and, upon its own initiative, ordered plaintiff's attorneys, and not plaintiff, to reimburse CDI for any attorney's fees incurred in bringing CDI's motion to dismiss the complaint as against itself. *See* 28 U.S.C. § 1927; Fed.R.Civ.P. 11, 37. The court invited counsel for CDI to file affidavits with the court detailing the attorney's fees incurred in preparing CDI's motion to dismiss.

The court has received an affidavit from George R.A. Johnson of the law firm of Mackall, Crounse & Moore, indicating that CDI incurred $1,225.80 in attorney's fees and costs in connection with the attempt to dismiss CDI from this action. The court has also received an affidavit of Donald C. Swenson of the law firm of Lindquist & Vennum, indicating that CDI further incurred attorney's fees and costs in the amount of $2,770.40 in preparation of CDI's motion to dismiss and memorandum of law submitted in support of the motion.

The court then received plaintiff's objections to the Johnson and Swenson affidavits. Finally, the court received Richard B. Solum's letter of April 6, 1987, in which Mr. Solum conceded that focusing on the "time strictly related to just the motion to dismiss" would reveal that the Lindquist & Vennum firm billed CDI $1,450.00 for effort undertaken in this connection. Thus the total fees sought by CDI in connection with its motion to dismiss plaintiff's complaint is $2,675.80.

The court has reviewed the objections set forth in Samuel P. Sporn's affidavit of March 31, 1987. Except insofar as this affidavit questions the reasonableness in amount of the fees described in the Swenson affidavit, the court perceives no merit in the objections raised by this affidavit. With respect to the reasonableness of fees sought for time expended in bringing CDI's motion to dismiss, the involvement of two law firms appears to have produced substantial duplication of effort. In view of the uncomplicated nature of the issue presented by CDI's motion to dismiss, the court concludes that its award of fees in this matter should be limited to $1,500.00.

### ORDER

Based upon the foregoing, the submissions and arguments of the parties, and the record as presently constituted,

IT IS ORDERED That plaintiff's motion for an order permitting Robert D. Phillips to intervene in this action as an additional party plaintiff, permitting service of an amended complaint, and continuing all other pending motions for a period of 45 days be and the same hereby is denied.

IT IS FURTHER ORDERED That defendants' motion for summary judgment be and the same hereby is granted with respect to Counts I and II of plaintiff's complaint and denied with respect to Counts III and IV of plaintiff's complaint. Plaintiff's action is dismissed with respect to Counts I and II of plaintiff's complaint.

IT IS FURTHER ORDERED That plaintiff's motion to certify a plaintiff class be and the same hereby is denied.

IT IS FURTHER ORDERED That plaintiff's motion to certify a defendant class be and the same hereby is denied.

IT IS FINALLY ORDERED That plaintiff's counsel, and not plaintiff personally, reimburse Computer Depot, Inc. for its attorney's fees and costs incurred in preparing its motion to dismiss plaintiff's complaint in the amount of $1,500.00.