144

BURKHALTER TRAVEL
AGENCY, Plaintiff,

v.

MacFARMS INTERNATIONAL, INC.,
Mauna Loa Macadamia Nut Corpora-
tion, Inc., and Thomas R. Modisette,
Defendants.

SPECIALTY FOOD DISTRIBUTORS,
INC., Plaintiff,

v.

MACFARMS INTERNATIONAL, INC.,
Mauna Loa Macadamia Nut Corpora-
tion, Inc., and Thomas R. Modisette.

Nos. C–90–2319–DLJ, C–91–0282–DLJ.

United States District Court,
N.D. California.

Dec. 9, 1991.

Samuel D. Heins with Opperman, Heins & Paquin, Minneapolis, Minn., Michael D. Hausfeld and Daniel A. Small with Cohen, Millstein, Hausfeld & Toll, Washington, D.C., Henry H. Rossbacher with Rossbacher & Associates, Los Angeles, Cal., and Francis O. Scarpulla with Scarpulla & Scarpulla, San Francisco, Cal., for plaintiffs Burkhalter Travel Agency and Specialty Food Distributors, Inc.

Josef D. Cooper with Law Offices of Josef D. Cooper, San Francisco, Cal., for defendant MacFarms Intern., Inc.

Loyd W. McCormick, Kenta K. Duffey and Daniel W. Burkhardt with McCutcheon, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Mauna Loa Macadamia Nut Corp., Inc.

J. Thomas Hannan with Lovitt & Hannan, Inc., San Francisco, Cal., for defendant Thomas R. Modisette.

## ORDER

JENSEN, District Judge.

This is an action against several macadamia nut producers alleging the existence of a price fixing conspiracy in violation of federal antitrust laws. Plaintiffs are Burkhalter Travel Agency ("Burkhalter") and Specialty Food Distributors ("Specialty"). Defendants are the Hawaiian-based macadamia nut producers MacFarms International ("MacFarms"), Mauna Loa Macadamia Nut Corporation ("Mauna Loa"), and Thomas Modisette, president of MacFarms. The action had its genesis in statements made by a disgruntled former MacFarms employee James McCaffrey who claimed that MacFarms and Mauna Loa had conspired to artificially fix prices. *See* Mauna Loa Opposition to Class Certification, at 1–2. Plaintiffs now claim that there was a conspiracy to fix prices from 1985 to September 1990 in violation of federal antitrust laws.

There are two motions currently before the Court. Plaintiffs move for certification of a class of all direct purchasers of macadamia nuts in the United States during the period of the alleged conspiracy. Defendants oppose this motion and in turn move for summary judgment against Burkhalter on grounds that it lacks standing to assert antitrust claims against them. A hearing was held on these motions on October 23, 1991, at which Samuel Heins, Michael Hausfeld, Henry Rossbacher, Daniel Small, and Francis Scarpulla appeared for plaintiffs and Josef Cooper, Loyd McCormick, Kenta Duffey, Daniel Burkhardt, and Thomas Hannan appeared for defendants. Having considered the papers submitted and the arguments of counsel, the Court GRANTS defendants' motion for summary judgment against Burkhalter and DENIES plaintiffs' motion for class certification.

## I. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law."

■ In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors, Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983); Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original). When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party. T.W. Electric, 809 F.2d at 630–31 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment may issue "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 106 S.Ct. at 2552. The standard for judging either a defendant's or plaintiff's motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### B. Undisputed Facts

Based on this standard for evaluating motions for summary judgment, the Court finds that the following facts are undisputed. Burkhalter is a travel agency located in Wisconsin that arranges group vacation packages. It made its only purchase of macadamia nuts in October 1989 pursuant to an agreement with Sub–Zero Dealers ("Sub–Zero") to arrange a London vacation for a group of people. According to this arrangement, Burkhalter arranged a variety of different matters for Sub–Zero, among which was the purchase of 42 cases of macadamia nuts to give away in London to the travellers. Burkhalter took a profit from the total package, but billed Sub–Zero only for its costs on the specific macadamia nut line item.

Based on these facts, defendants argue that summary judgment should be entered against Burkhalter. They argue that Sec-

tion 4 of the Clayton Act only allows "direct purchasers" of overcharged products to bring suit against an alleged antitrust violator. Defendants argue that because Burkhalter purchased the nuts on behalf of Sub–Zero and did not take any profit from the sale, Burkhalter is not a direct purchaser within the meaning of Section 4. Because Burkhalter is not a direct purchaser, defendants argue that it lacks standing to bring this action.

### C. Analysis

#### 1. Substantive Legal Standard

##### a. The Direct Purchaser Rule and Damages

The Clayton Antitrust Act limits who can bring an action for damages against a violator of antitrust laws. Section 4 states that

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages by him sustained....

15 U.S.C. § 15(a). The Supreme Court has interpreted this section to mean that only direct customers of alleged price fixers may claim damage from an alleged antitrust violator's overcharging for goods. *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 2064, 52 L.Ed.2d 707 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 2231–32, 20 L.Ed.2d 1231 (1968).

The Supreme Court rested its interpretation on three policy considerations. First, the Supreme Court reasoned that it would be too difficult to demonstrate that indirect purchasers were actually damaged by overcharging. Given the complexities of market interactions, the Court reasoned that the difficulties of apportioning the economic effect of overcharging among many secondary and tertiary customers would be insurmountable. *Kansas v. Utilicorp United, Inc.,* 497 U.S. 199, 110 S.Ct. 2807, 2812, 111 L.Ed.2d 169 (1990); *Illinois Brick,* 97 S.Ct. at 2064; *Hanover Shoe,* 88 S.Ct. at 2231; *Royal Printing Co. v. Kim-*

*berly–Clark Corp.,* 621 F.2d 323, 325 n. 3 (9th Cir.1980) (complexity of proof is most important reason for limiting damage claims by indirect purchasers).

Second, the Supreme Court was concerned that if an antitrust violator was allowed to prove that the higher overcharged cost was passed on to indirect purchasers, the direct purchaser's damages would be greatly reduced and no party would have a sufficient stake in the matter to bring a claim against the seller. *Utilicorp,* 110 S.Ct. at 2812; *Illinois Brick,* 97 S.Ct. at 2064; *Hanover Shoe,* 88 S.Ct. at 2232. Underlying this concern is the strong judicial policy in favor of the vigorous private enforcement of antitrust laws. *Illinois Brick,* 97 S.Ct. at 2074.

Third, there is a concern that if multiple parties were allowed to bring actions for treble damages, there would be the potential for multiple recoveries for the same conduct. Given the strength of the treble damage remedy, the Supreme Court wanted to limit the potential for multiple recoveries for the same economic dislocation, and the easiest way to do that is to limit standing to direct purchasers. *See Utilicorp,* 110 S.Ct. at 2815 (citing *Illinois Brick,* 97 S.Ct. at 2066–67); *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 911, 74 L.Ed.2d 723 (1983) (noting importance of avoiding "the risk of duplicate recoveries").

■ Given the general rule that only direct purchasers may claim damages for antitrust violations, the Supreme Court has articulated two exceptions where indirect purchasers may state claims for damages. First, an indirect purchaser may state a claim for damages if it received the goods through the direct purchaser according to a preexisting "cost-plus contract." *Utilicorp,* 110 S.Ct. at 2818; *Illinois Brick,* 97 S.Ct. at 2064 n. 2; *Hanover Shoe,* 88 S.Ct. at 2232. In such a contract, there must be a commitment by the direct purchaser to purchase a fixed quantity of the product for the indirect purchaser, and there must be no possibility of the direct purchaser's

profits being affected by the seller's overcharging. *See Utilicorp*, 110 S.Ct. at 2818 (rejecting argument that facts showed cost-plus contract on grounds that these characteristics were not present). The logic of this exception is that it avoids the difficulties of proving the damages incurred by indirect purchasers, the avoidance of which was the primary rationale behind the direct purchaser rule. *Id.* at 2813, 2818.

█ The second exception exists where the direct purchaser is controlled by another party, whether it be the seller or the indirect purchaser. *Illinois Brick*, 97 S.Ct. at 2070 n. 16. The logic of this exception is the same as that justifying the cost-plus contract exception: if the direct purchaser is controlled by another party, then there is no possibility that it will be damaged by the overcharging; rather the truly injured purchaser will be the controlling party. As the Ninth Circuit interpreted this exception, it describes a situation

> [W]here "the effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case," and where the arrangement "circumvent[s] complex market interactions as would a [preexisting] cost-plus contract."

*Royal Printing Co.*, 621 F.2d at 326 n. 4 (quoting *Illinois Brick*, 97 S.Ct. at 2070). In essence, these two exceptions really describe a single circumstance where an indirect purchaser is clearly the party sustaining the injury caused by the fixing of prices.

The Supreme Court has made it clear that these are very limited exceptions. Although the Court has noted three times that these exceptions theoretically exist, each time the Court has done so it has refused to hold that the exception applied to the facts in front of it. Moreover, when the Court considered a strong claim that a contract fell into the preexisting cost-plus contract exception in *Utilicorp*, it rejected it because the Court insisted on "certainty" that there would be no possibility of complex market interactions. 110 S.Ct. at

2818. Thus, while it is clear that these exceptions exist, they are very limited in their scope and application.

### b. The Direct Purchaser Rule and Standing

The direct purchaser rule articulated in *Hanover Shoe* and *Illinois Brick* is not a standing rule. In articulating the direct purchaser rule, the Supreme Court has distinguished between the question of who can recover damages and who has standing to sue. *Illinois Brick*, 97 S.Ct. at 2066 n. 7 (standing under Section 4 of the Clayton Act is a conceptually distinct issue from the damage issue; Court did not decide standing issue). This makes intuitive sense, because even if a plaintiff may not present evidence to demonstrate *damages* under Section 4 of the Clayton Act, a plaintiff may nevertheless have standing to seek *injunctive relief.*

█ The Supreme Court has identified factors to be considered by a trial court in determining whether a party has standing under Section 4 of the Clayton Act. *See Assoc. General Contractors*, 103 S.Ct. at 908 ("[T]he infinite variety of claims that may arise make it virtually impossible to announce a black letter rule that will dictate the result in every case."). These factors are: "1) the specific intent of the alleged conspirators; 2) the directness of the injury; 3) the character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character; 4) the existence of other, more appropriate plaintiffs; [and] 5) the nature of the plaintiff's claimed injury." *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir.1989) (citing *Assoc. General Contractors*, 103 S.Ct. at 912). The direct injury rule may inform the standing determination: if a party would be barred from raising damage claims by the direct purchaser rule, the Court may consider that in determining whether to grant standing. *Assoc. General Contractors*, 103 S.Ct. at 912 (quoting *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 2547 n. 11, 73 L.Ed.2d 149 (1982)). How-

ever, no single factor is decisive; all must be balanced by a trial court. *R.C. Dick Geothermal Corp.*, 890 F.2d at 146.

### 2. Application of Substantive Legal Standard to the Facts of this Case

Each side has failed to address the requirements for a party to have *standing* under Clayton Act § 4. Defendants simply assume that the requirements for standing are the same as that for a plaintiff to provide evidence of damages. Plaintiffs, on the other hand, have argued about the application of the direct purchase rule to a party's damage claim, but apparently did not realize that defendants made a standing argument.

The Court will deal with this argumentative near miss in two ways. It will begin by evaluating defendants' motion under the assumption that it seeks summary judgment against Burkhalter for failure to demonstrate any injury under the direct purchaser rule. After it has decided whether plaintiff survives the direct purchaser rule, it will apply the standing analysis to the facts and decide whether Burkhalter is an appropriate plaintiff.

### a. Analysis Under the Direct Purchaser Rule

■ Defendants move for summary judgment on grounds that Burkhalter does not have standing to sue under Section 4 of the Clayton Act. MacFarm's Memorandum for Summary Judgment, at 1. They argue that although Burkhalter formally was the direct purchaser of the macadamia nuts from MacFarms, the actual direct purchaser was Sub–Zero. Defendants argue that the macadamia nuts were purchased by Burkhalter which was then reimbursed for the cost of the purchase by Sub–Zero. Although Burkhalter took a fixed profit from the entire transaction, there was no profit built into this specific item of the transaction for Burkhalter: the line item for the nuts reads "Macadamia nut costs plus shipping/handling charges." MacFarm's Memorandum for Summary Judgment, at 4. Thus, defendants argue that this was a fixed quantity purchase with Sub–Zero au-

tomatically paying all of Burkhalter's costs. Defendants characterize the arrangement between Burkhalter and Sub–Zero as either a preexisting cost-plus contract or as an agent-principal relationship, both of which would place this situation within an exception to the direct purchaser rule as articulated in *Hanover Shoe* and *Illinois Brick*. *Id.* at 5–7.

Burkhalter responds in two ways. First, Burkhalter argues that there is no real preexisting cost-plus contract exception, as the Supreme Court has only mentioned it in dicta. Applying the basic rule to this case means that neither side can submit evidence that the overcharging was passed on to indirect buyers such as Sub–Zero. Burkhalter's Opposition to Summary Judgment, at 2–3. Second, Burkhalter argues that the Court must analyze the total contract and not just the line item for the macadamia nuts. The total profit/cost ratio for the overall contract was elastic, plaintiff argues, thus taking the agreement out of the exception. *Id.* at 4–5. Third, Burkhalter argues that "the record contains no evidence to suggest that Burkhalter could not or would not have increased its costs in the absence of an overcharge. Defendants have thus failed to meet their burden of showing that no genuine issue of material fact exists." *Id.* at 4.

Analyzing these arguments, it is clear that an exception to the direct purchase rule does exist. Although it is true that the Supreme Court has never applied the rule in a case before it, it is unlikely that the Court would have mentioned the exception in three separate opinions if it believes that it does not exist.

The issue turns on whether the Court should evaluate the terms of the specific line item for macadamia nuts or the terms of the total vacation package. If the Court were to characterize the agreement as the total vacation package, defendants' arguments clearly fail. There is no question that Burkhalter took a profit from the entire package and that its total profits could vary with its total costs. This would be a circumstance that the Supreme Court wanted to avoid when it articulated the direct

purchaser rule: the Court would have to conduct a complex economic analysis to determine the cause and apportionment of damages.

The agreement in question is best characterized as the specific macadamia nut line item, however, making defendants' arguments persuasive. This action is about Burkhalter's purchase of macadamia nuts, not about its arranging a travel package to London. It is most appropriate for the Court to focus on the only conduct which is legally relevant in this action: the purchase of goods whose price has allegedly been fixed.

The pivotal concerns of the Supreme Court in designating the direct purchaser to be the injured party for the purposes of Clayton Act § 4—the difficulty of apportioning damage between direct and indirect purchasers and of limiting the stake of any one plaintiff in the action—are not present if the only agreement being considered is the line item. Burkhalter did not take any profit from the sale of the nuts: it sold them to Sub–Zero at cost.[1] There is thus no need to apportion damages between Burkhalter and Sub–Zero or to be concerned that all plaintiffs will have too small of a stake in the matter, because Sub–Zero—and not Burkhalter—incurred all of the damage. The Supreme Court's concern that there not be multiple actions against antitrust violators for the same injury also points to dismissing Burkhalter, because if there is going to be one plaintiff, it should be the party that incurred the damage (Sub–Zero).

Burkhalter has no claim for damages under the direct purchaser rule. Whether its inability to state a claim for damages means Burkhalter lacks standing to pursue this action is discussed next.

### b. Standing Analysis

◼ Three of the five factors relevant to the standing determination dictate that Burkhalter be dismissed as a plaintiff. Initially, the alleged price fixing did not directly cause an injury to Burkhalter. Burkhalter was the direct purchaser, but the injury was caused to Sub–Zero according to the preexisting cost-plus contract. Sub–Zero made the decision to buy the nuts, paid the cost of their purchase, and would have had its profit reduced if the prices were fixed. Although the additional cost of the nuts could have been passed on by Sub–Zero to other parties, Sub–Zero was the party that was most directly injured.

The fifth factor in the standing analysis—the existence of other more appropriate plaintiffs—also points to denying Burkhalter standing. As Sub–Zero actually incurred the injury, it is obvious that Sub–Zero would be a better plaintiff than Burkhalter, which was acting only as Sub–Zero's agent. In addition, Burkhalter only purchased macadamia nuts once during the period of the alleged conspiracy, and that purchase consisted of 42 boxes of nuts. It is absurd to think that a better plaintiff than a travel agency in Wisconsin cannot be found to pursue a class action on behalf of all persons who directly purchased macadamia nuts in the United States over a five-year period.

Based on these first two factors, the third factor in the standing analysis also suggests that Burkhalter is not an appropriate plaintiff. Because Sub–Zero likely would have standing to sue defendants for this transaction, there would be the risk of a duplicative recovery if Burkhalter were given standing as well. Moreover, if both Burkhalter and Sub–Zero were given standing in this action, apportioning the damages that each has sustained would be

---

1. Burkhalter's argument that defendants have not met their burden of proof for summary judgment on this specific issue misunderstands the standard for summary judgment. Based on plaintiff's evidence, defendants have met their burden of showing that there is no genuine issue of material fact regarding Burkhalter's profits for the macadamia nut sale. It is now plaintiff's burden to show that there is an issue of material fact because it would be Burkhalter's burden to do so at trial. *See Celotex Corp.,* 106 S.Ct. at 2552. As Burkhalter has failed to show that it would have made additional profits from the macadamia nuts themselves, defendants' showing is sufficient.

highly complex because both were involved in the same transaction. Finally, Burkhalter's damages are at best speculative, given the fact that the macadamia nuts themselves were purchased according to a cost-plus contract that did not allow for Burkhalter to take a profit.

All of these factors point toward denying standing to Burkhalter. There are other more appropriate plaintiffs than Burkhalter, and allowing Burkhalter to remain in this action only risks forcing the Court to engage in a complex apportionment of damages that the Supreme Court has stated should be avoided.

## D. Conclusion

Only one purchaser of any specific good whose price has allegedly been fixed may state a claim for damages under the Clayton Antitrust Act. Although in most cases that single person is the direct purchaser, in some cases that person will be a secondary purchaser who has absorbed all of the damages of the price fixing. Burkhalter falls into this exception and cannot state a claim for damages against defendants. Given its inability to state such a claim, Burkhalter is an inappropriate plaintiff to prosecute this action.[2] Accordingly, defendants' motion for summary judgment is GRANTED and Burkhalter is dismissed from the action.

## II. Motion to Certify a Class

Plaintiff Specialty[3] seeks to certify a class consisting of all persons in the United States who directly purchased macadamia nuts from defendants from 1985 to September 1990. This proposed class would include buyers of both retail and bulk macadamia nuts, buyers on both Hawaii and the mainland, and buyers of each variety of macadamia nut product (salted nuts, chocolate covered nuts, toasted nuts, macadamia nut brittle, macadamia nut oil, etc.).

## A. Requirements for Class Certification

Class certification is governed by Federal Rule of Civil Procedure 23, which provides a two-step procedure. First, subsection (a) of Rule 23 sets out four conjunctive requirements which must be met in all class actions: "(1) the class [must be] so numerous that joinder of all members is impracticable, (2) there [must be] questions of law or fact common to the class, (3) the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class, and (4) the representative parties [must] fairly and adequately protect the interests of the class."

Second, if all the requirements of Rule 23(a) are met, then the party seeking certification must also show that they have met one of the four disjunctive tests set out in Rule 23(b). Thus, to certify a class the Court must find *either:*

(1) That common questions of law or fact predominate and that a class action is superior to other available methods of adjudication, Rule 23(b)(3); *or*

(2) that the defendant acted or refused to act on grounds generally applicable to the class, rendering declaratory or injunctive relief appropriate with respect to the class as a whole, Rule 23(b)(2); *or*

(3) that the prosecution of individual actions would create a risk of inconsistent

---

**2.** Defendants also argue that summary judgment should be granted because plaintiff alleges that the nut conspiracy ended by early 1989 and that plaintiff only purchased the nuts in October 1989. MacFarm's Memorandum for Summary Judgment, at 8–9. Plaintiff responds with a second declaration from its expert, Dr. Gary French, which states that the precise ending date of the macadamia nut conspiracy is still undetermined and that it needs more time to do discovery. Burkhalter's Opposition to Summary Judgment, at 7–8. Given that Specialty may need more time to conduct discovery on this issue, and that Burkhalter already is being dismissed from the action on other grounds, the

Court declines to grant summary judgment to defendants on this ground.

Plaintiffs have also calendared a motion to file a third declaration of Gary French. This motion, which was considered by the Court without a hearing, is denied on grounds that it is moot given the Court's present ruling.

**3.** As Burkhalter has already been dismissed from the action, it is now by definition an inadequate party to represent the class in this action. *See Kassover v. Computer Depot, Inc.,* 691 F.Supp. 1205, 1213 (D.Minn.1987). Accordingly, this discussion will only consider class certification under the assumption that Specialty would be class representative.

verdicts which would establish incompatible standards of conduct for defendant, Rule 23(b)(1)(A); *or finally*

(4) that adjudication of individual claims would be dispositive of the claims or non-party class members, or substantially impede the ability of non-party class members to pursue their own claims. Rule 23(b)(1)(B).

 Upon a motion for certification, the proponent of the class bears the burden of establishing that the requirements of Rule 23 are met. *In re Northern District of California Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 854 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *In re Computer Memories Securities Litigation,* 111 F.R.D. 675, 684 (N.D.Cal.1986). The failure of plaintiffs to carry their burden as to any one of the requirements of Rule 23 precludes the maintenance of the lawsuit as a class action. *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975).

 In determining whether plaintiffs have carried their burden, the Court may not consider the merits of plaintiffs' claims. *In re Unioil Securities Litigation,* 107 F.R.D. 615, 618 (C.D.Cal.1985). Instead, "[t]he court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that plaintiff may be altogether unable to prove his allegations." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

 However, the Court's obligation to accept plaintiffs' substantive allegations as true does not mean that the Court must accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. *Morrison v. Booth,* 763 F.2d 1366 (11th Cir.1985) (rejecting certification in the absence of factually specific allegations). Before ordering that a lawsuit may proceed as a class action, the trial court must rigorously analyze whether the class action allegations meet the requirements of Rule 23. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). It is ultimately in the Court's "discretion to determine the maintainability and conduct of class actions." *Kassover v. Computer Depot, Inc.,* 691 F.Supp. 1205, 1213 (D.Minn.1987).

**B. Application of Class Certification Requirements to this Case**

 Plaintiffs seek to certify a class of all direct purchasers of Macadamia nuts in the United States. Their approach is to go down each of the elements they need to establish under Rule 23 and argue that they meet the requirements; defendants characterize this approach as "boilerplate." MacFarms' Opposition to Class Certification, at 1, 5. Specifically, plaintiffs argue that there are thousands of direct purchasers of macadamia nuts in the United States, making individual actions or joinder impractical. Plaintiffs' Motion for Class Certification, at 8. As all of the claims are essentially the same ones of horizontal price fixing and those are the claims of Specialty,[4] plaintiffs argue that there are common questions of law and fact and that plaintiffs' claims are typical of those of the class. *Id.* at 9–12. Given the great experience of plaintiffs' counsel in pursuing class actions, plaintiffs argue that they will be able to fairly and adequately represent the class. *Id.* at 12–14.

With the class action prerequisites met, plaintiffs argue that this action falls into the category of actions where common questions predominate and a class action would be the superior method of adjudicating the dispute. *Id.* at 14–19; *see* Rule 23(b)(3). They base this argument on the fact that the same conduct by defendants—price fixing—is the cause of all of the class members' injuries, and that the focus will be on large economic analyses of the total

---

**4.** Specialty is a gourmet food distributor in Florida that buys products that cannot normally be purchased in grocery stores. Over the period of the alleged conspiracy, it purchased approximately $457,000 of macadamia nuts from Mauna Loa. Plaintiffs' Reply on Class Certification, at 3. Macadamia nuts represent 0.1 to 0.2 percent of Specialty's total sales. *Id.* at 14.

injurious effect of price fixing on the domestic macadamia nut market. *Id.* at 15–16. Accordingly, they argue that these claims may be best tried in a single action.

Defendants make a myriad of arguments against class certification. These arguments can be grouped together into three primary contentions. First, they argue that Specialty is an inappropriate representative for the class. Defendants argue that Specialty should not be appointed to represent the class because it represents only a very small part of the overall macadamia nut market, gourmet food distributors. Defendants argue that the macadamia nut purchaser class is more properly represented by larger and more diverse purchasers. MacFarm's Opposition to Class Certification, at 8–9.

Defendants' second major argument is that macadamia nut industry and market is too complicated to handle in a single class action. They propose that the Court break down the total class of purchasers into smaller groups based on the following lines. *See generally* MacFarms' Opposition to Class Certification, at 8–12; Mauna Loa's Opposition to Class Certification, at 3–5, 13–15. First, they argue that there should be different classes for the mainland purchasers and the Hawaiian purchasers, as the greatest volume of nut sales are made in Hawaii and the nuts are marketed differently there. Second, they argue that the Court should distinguish between retail nut sales and bulk nut sales, as the market characteristics are very different. Third, they argue that the class should broken down into purchasers of specific macadamia nut products as total nut sales are so diverse that generalizations cannot be made. Finally, they argue that the class should be broken down by the characteristics of different purchasers (i.e., mass distributors, retail consumers, specialty distributors, etc.).

Defendants' third major contention is that it would be too difficult to prove the elements of an antitrust violation in the context of a class action. Specifically, they argue that damages cannot be shown through nationwide economic studies: each

plaintiff is very different. MacFarms' Opposition to Class Certification, at 13–18. In addition, they argue that claims of fraudulent concealment require analysis of whether each plaintiff was deceived; a class action would not permit this type of analysis. Mauna Loa's Opposition to Class Certification, at 22. Defendants conclude that individual cases would be required to properly try this action under antitrust laws.

Plaintiff has failed to meet its burden of satisfying each element of Rule 23. While defendants have made many telling arguments against class certification, the Court will only decide three of these arguments which, by themselves, require that the motion be denied.

■■■■■ First, Specialty has failed to meet its burden of demonstrating that it would be an adequate class representative. Rule 23(a)(4) requires that "the representative parties [ ] fairly and adequately protect the interests of the class." Parties are generally considered to be adequate representatives of absent class members if there are no conflicts of interest between the representatives and class members and if the Court is persuaded that counsel for the representatives will vigorously pursue the action. *General Telephone Co. of Southwest v. Falcon,* 102 S.Ct. at 2370 n. 13 (representation requirement "raises concerns about the competency of class counsel and conflicts of interest"); *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978); *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1461–62 (S.D.Cal. 1988). In addition, a party who is not familiar with basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action. *Koenig v. Benson,* 117 F.R.D. 330, 337 (E.D.N.Y.1987); *Kassover,* 691 F.Supp. at 1213–14. Thus courts have refused to allow a person to represent a class when, for example, she "appeared unaware of even the most material aspects of [her] action ... [not knowing] why these particular defendants are being sued ... [and having] no conception of the class of people she

purportedly represents." *In re Storage Technology Corp. Securities Litigation,* 113 F.R.D. 113 (D.Colo.1986); *see also Epifano v. Boardroom Business Products, Inc.,* 130 F.R.D. 295, 302 (S.D.N.Y.1990); *Kassover,* 691 F.Supp. at 1213–14; *Lubin v. Sybedon Corp.,* 688 F.Supp. 1425, 1462 (S.D.Cal.1988). In considering the involvement and knowledge of a prospective class representative, "[t]he Court must feel *certain* that the class representative will discharge his fiduciary obligations by fairly and adequately protecting the interests of the class." *Koenig,* 117 F.R.D. at 333–34 (emphasis added).

In this case, the Court is not satisfied that Specialty will be able to adequately represent the proposed class of all direct purchasers of macadamia nuts in the United States. Defendants have submitted eye-opening evidence that the management of Specialty knows very little about this action and is not prepared to exercise its fiduciary duties on behalf of the class. *See* Mauna Loa's Opposition to Class Certification, at 15–16. The President of Specialty, Bud Suarez, apparently lacked a basic understanding of the identity of some of the defendants in this action when he was questioned in a deposition by defense counsel. *Id.* at 15. He apparently also is not entirely clear about who he seeks to represent: at various points in his deposition, he stated that the class would be composed of the defendants, purchasers only in Hawaii, or only purchasers located in San Francisco. *Id.* at 15–16. Finally, it is unclear that he has any significant understanding of price policies at his own firm or about the macadamia nut industry as a whole.[5] *Id.* at 16 n. 8. Given this "alarming unfamiliarity with the suit," *Koenig,* 117 F.R.D. at 337, the Court cannot be certain that Specialty will adequately represent the proposed class. As plaintiff's counsel would be acting on behalf of an essentially unknowledgeable client, certifying a class

with Specialty as its representative would risk a denial of due process to the absent class members.

The second reason why a class will not be certified is that plaintiff has failed to show that common issues would predominate in the proposed class and that a class action would be the best way to proceed in this situation. Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy." In this case, while the proposed class has a common issue—the alleged price fixing by defendants—there are many cross-cutting factual circumstances among the class members that would make the class incoherent. As defendants have argued, there are significant differences between the markets for macadamia nuts on Hawaii and on the mainland, between large and small purchasers, and between bulk and retail purchasers. *See* Mauna Loa's Opposition to Class Certification, at 4–6. In these different markets, defendants price nuts in different ways and purchasers have varying degrees of leverage over defendants. *Id.* at 6. As this action is about price-fixing activities conducted by defendants, grouping purchasers in all of these sub-markets together ignores the crucial differences in how defendants set prices for different purchasers. Given the diversity of markets, it can hardly be said that common issues predominate.

Beyond this, the class as currently defined by plaintiffs would clearly be unmanageable. Rule 23(b)(3)(D) explicitly invites the Court to consider "the difficulties to be encountered in the management of a class action," meaning that the Court should consider any factor which bears on whether a

---

**5.** Specialty does not rebut these specific allegations by defendants. It only responds that Suarez tried to understand the complaint when it first arrived from his counsel and that the company's director of purchasing was aware that the proposed class included all direct domestic purchasers of macadamia nuts. Plaintiffs' Reply, at 15–16. Given the severe lack of knowledge about the basic facts at issue in this action revealed by the deposition of Specialty's president, Specialty's attempt at rehabilitation is too weak to persuade the Court to permit the class to be certified.

class action would be the most appropriate way to proceed. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974). Beyond the existence of diverse macadamia nut sub-markets that would make proof of price fixing difficult, the class as presently defined would actually include defendant MacFarms. At oral argument, defense counsel Josef Cooper pointed out that as part of MacFarm's business, it directly purchases bulk macadamia nuts from Mauna Loa to be turned into specialized macadamia nut products. This inclusion of one of the defendants in the proposed plaintiff class reveals the absurdity of plaintiff's current proposed class formulation and destroys any sense that the Court could manage this action in a coherent fashion.

Plaintiffs have the burden of demonstrating that their proposed class would meet the requirements of Rule 23. Neither of the two current plaintiffs would be able to adequately represent the class and the proposed class itself would include members with very different factual circumstances. Accordingly, the Court must DENY plaintiffs' motion for class certification.

### III. Conclusion

Based on the above analysis and discussion, the Court GRANTS defendants' motion for summary judgment. Plaintiff Burkhalter Travel Agency is dismissed from the action on grounds that it lacks standing to assert claims for damages against defendants. The Court also DENIES plaintiffs' motion to certify a class until the class is redefined in a way which ensures that the action will be manageable and that absent class members will be adequately represented.

IT IS SO ORDERED.