**David HOEXTER, et al., Plaintiffs,**

v.

**James P. SIMMONS, et al., Defendants.**

**And All Related Cross-Actions**

Nos. CIV. 89–1069 PHX RCB, 89–1073 PHX RCB, 89–1093 PHX RCB, 89–1131 PHX RCB, 89–1732 PHX RCB, 89–1733 PHX RCB, 89–1823 PHX RCB, 89–1855 PHX RCB, 89–1935 PHX RCB and 89–0347 PHX RCB.

United States District Court,
D. Arizona.

May 22, 1991.

Marian P. Rosner, Laurence D. Paskowitz, Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs Hoexter, Siegel, Kaufman, Diversified Imaging Supply Corp.

James R. Malone, Jr., Greenfield & Chimicles, Haverford, Pa., for plaintiff Shields.

Jerry C. Bonnett, Bonnett, Fairbourn & Friedman, P.C., Phoenix, Ariz., for all plaintiffs.

Mark Gardy, Abbey & Ellis, New York City, for plaintiff Lord.

Robert A. Skirnick, Wechsler, Skirnick, Harwood, Halebian & Feffer, New York City, for plaintiff Wettan.

Lawrence G. Soicher, Law Offices of Lawrence G. Soicher, New York City, for plaintiff Wettan.

William S. Lerach, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., for plaintiff Cooperman.

Edward M. Gergosian, Barrack, Rodos & Bacine, San Diego, Cal., for plaintiff Rocca.

Donald Wilson, Jr., Broening, Oberg & Woods, Pl.C., Phoenix, Ariz., for plaintiffs Rocca and Cooperman.

Martiss V. Anderson, Goodkind, Labaton & Rodoff, New York City, for plaintiff Siegel.

Richard Appleby, New York City, for plaintiff Siegel.

Max Berger, Bernstein, Litowitz, Berger & Grossman, New York City, for plaintiff Kaufman.

Vaughn A. Crawford, Katherine M. Harmeyer, Snell & Wilmer, Phoenix, Ariz., for defendants.

## ORDER CERTIFYING CLASS

BROOMFIELD, District Judge.

Plaintiffs seek certification of a class that would include "All persons who purchased Valley National Corporation common stock from June 30, 1988 through October 18, 1989 (the "Class Period"), and who suffered damages as a result thereof (the "Class")," excluding defendants and related parties. Plaintiffs assert that the Class meets the four prerequisites to a class action set forth in Fed.R.Civ.P. 23(a) and the requirements for maintaining a class action prescribed by Rule 23(b)(3). Defendants object to certification of the Class on the grounds that it fails to satisfy certain of the requirements for bringing a class action under Rule 23.

Under Rule 23(a), a class action may be brought only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Additionally, the action must meet one of several alternative requirements under Fed.R.Civ.P. 23(b). Plaintiffs seek to maintain a class under Rule 23(b)(3), which requires that the court find:

that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

Defendants do not contest plaintiffs' assertion that the Class satisfies the prerequisites of Rule 23(a)(1) and (2) regarding numerosity and common questions of law and fact, and the court finds that those requirements are met. Defendants contend, however, that the claims of the Class representatives are not typical of the claims of numerous other members of the Class, that common questions of law and fact do not predominate over individual questions, that a class action is not a superior method of resolving the controversy, and that not all of the named plaintiffs are adequate class representatives. Having considered the parties' written and oral arguments on these issues, the court will grant plaintiffs' motion to certify the class.

## I. PREDOMINANCE OF COMMON QUESTIONS AS TO FEDERAL CLAIMS

With regard to the federal securities law claims, plaintiffs assert that the claims of the Class members raise questions concerning a "common nucleus of misrepresentations, material omissions, and market manipulations," that predominate over any individual questions of "damages, causation or reliance." Motion at 14 (quoting *In re Unioil Securities Litigation*, 107 F.R.D. 615, 622 (C.D.Cal.1985). Defendants counter that individual questions of

reliance predominate over common questions in this case, because plaintiffs may not employ the fraud-on-the-market theory to establish reliance in cases involving securities traded over the counter (OTC). Reliance will be presumed with regard to securities traded on national markets, because the securities prices on an "open and developed" market are presumed to be determined by material information concerning the company that is available to investors. *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Defendants argue that the OTC market is not sufficiently developed or efficient to support application of the theory to securities traded on that market. Defendants rely on a recently-decided district court case, *Epstein v. American Reserve Corp.,* No. 79 C 4767 (N.D.Ill.1988) (available on Westlaw, 1988 WL 40500).

Plaintiffs argue in their reply that the OTC market is sufficiently developed and efficient to support application of the fraud-on-the-market theory to securities traded OTC. Plaintiffs present statistical information in support of their contention that the market in which Valley National shares are traded and were traded during the Class Period involves a high volume of active trading. Plaintiffs also cite several decisions in which courts have refused to assume the OTC market to be inefficient or have simply assumed that the fraud-on-the-market theory applies to the OTC market. *See e.g., Finkel v. Docutel–Olivetti Corp.,* 817 F.2d 356, 364 n. 25 (5th Cir.1987); *Cammer v. Bloom,* 711 F.Supp. 1264, 1980–93 (D.N.J.1989).

Plaintiffs also contend that the fraud-on-the-market theory applies to the Valley National stock because the market for that stock during the relevant period, regardless of where it was traded, was itself efficient, that is, the price of the stock reflected disclosed information about the company's business. Plaintiffs analyze the efficiency of the market for Valley National shares, employing the factors suggested in *Cammer v. Bloom,* 711 F.Supp. at 1286–87 and *Hurley v. Federal Deposit Insurance Corp.,* 719 F.Supp. 27, 34 (D.Mass. 1989). Plaintiffs conclude that the Valley National market was efficient based on the volume of actively traded shares, investments analysts' following of the stock, Valley National's status as a Form S–3 registrant, and the apparent strong reaction in the market to the positive and negative disclosures at issue in this case. Plaintiffs also contend that defendants raise the issue prematurely, because it goes to the merits of the case.

The court agrees with plaintiffs that the mere fact that the Valley National shares were traded on the OTC market rather than on a national exchange does not prevent certification of the Class. Based on the authorities cited by plaintiffs and the rationale underlying the fraud-on-the-market theory, the court has determined as a preliminary matter that the OTC market as a whole and the market for Valley National shares in particular were sufficiently efficient to allow plaintiffs to establish reliance by employing that theory. The court declines to follow *Epstein,* which decided this question without the benefit of briefing by the parties and without explaining the grounds for its determination. Having found that the members of the Class are likely to raise common issues of fact as to reliance in attempting to prove their federal securities law claims, and accepting as undisputed that the other significant questions of law and fact are common to the claims of all Class members, the court finds as to the federal law claims that common questions predominate over issues affecting only individual class members.

## II. TYPICALITY AND ADEQUACY OF CLASS REPRESENTATIVES

Plaintiffs assert that the claims of the proposed Class representatives are typical of the claims of other Class members in that they allege injury from reliance upon the same false or misleading statements. Plaintiffs also claim that the named plaintiffs are adequate representatives of the Class because their counsel are qualified and experienced, and the plaintiffs' interests are not antagonistic to the interests of absent Class members.

Defendants contend that the Class representatives' claims are atypical or that the Class representatives are inadequate to the extent that the claims of Class representatives differ from the claims of: (1) institutional and sophisticated individual investors, arbitragers and option traders, all of whom would have traded for reasons other than reliance upon the integrity of the marketplace; (2) investors who sold their stock within the relevant period and thus may have benefited from the alleged misrepresentations or suffered losses for other reasons; and (3) investors who purchased shares after the last purchase made by a Class representative. Defendants further contend that two of the Class representatives, Steve Cooperman and Marion Lord, are atypical because of their extensive histories serving as plaintiffs in prior securities actions.

### A. Professional and Sophisticated Investors

■ Defendants contend that the Class representatives' claims are not typical of the claims that would be made by institutional investors and sophisticated individual investors, or arbitragers who purchased the Valley National stock during the relevant period. Defendants argue that, unlike the Class representatives, such investors would not be entitled to rely on the integrity of the market to prove reliance, because their investment decisions are based on other information and made for reasons other than price. Defendants maintain that they would be able to raise defenses against such investors that could not be raised against the Class representatives.

Plaintiffs effectively refute defendants' argument that inclusion of such investors' claims would prevent the Class from meeting the typicality requirement. Plaintiffs cite several authorities rejecting the arguments defendants make. In *Moskowitz v. Lopp*, for example, the court held that the motivations of various types of traders would not affect application of the fraud-on-the-market theory unless plaintiffs could show conclusively that price played no part in a particular trader's decision. *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D.Pa.

1989). The Eleventh Circuit upheld certification of a class that included both sophisticated institutional investors who had not relied on the allegedly fraudulent prospectuses when purchasing the stock and other investors of various levels of sophistication who had relied on them. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir.1983). The court held that the claims of class members were identical because they were based upon the same unlawful acts. The court considered the various class members' "investment experience or sophistication" irrelevant and found the degree of reliance by various members not to be a controlling element in the case. *Id.* When a fraud has been perpetrated on the market, all persons trading in the market, regardless of their sophistication, are subject to injury by the deceit. *Ballan v. Wilfred American Educational Corp., et al.*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,669, at 98,135, 1990 WL 203111 (E.D.N.Y. November 20, 1990).

Plaintiffs allege injury to all Class members as a result of defendants' failure to disclose material information. The fraud-on-the-market theory provides a presumption of reliance as to all Class members without regard to their investment experience or proficiency. Defendants may attempt to overcome that presumption as to particular investors during the course of the litigation. The possibility that particular investors may not actually have relied upon the price that resulted from defendants' alleged failure to disclose, however, goes to the merits of the case and will not be considered at this stage of the litigation. The issue does not prevent certification of the Class as proposed.

### B. Option Traders

■ Defendants also object to including option traders in the Class. Defendants argued in their response to the motion for class certification that option traders' claims would be atypical because the reasons for buying and selling options are different from the reasons for purchasing stocks. Plaintiffs replied that the proposed Class includes only persons who purchased

stocks, not options. Defendants explained at oral argument, however, that the basis for their objection to including option traders is not the difference in their reasons for purchasing or selling options. Rather, defendants argued that option traders who purchased stock during this period did so only because they were forced to do so when the holders of puts exercised their options. Thus, option traders who purchased stock during this period would be unable to claim reliance on price in an efficient market as the reason for purchasing the stock.

Plaintiffs responded at oral argument that option traders should not be excluded because: (1) reliance will be presumed so plaintiffs do not need to prove subjective reliance; and (2) traders purchasing stock pursuant to an option contract would still be victimized by the alleged scheme, because the effect on the price of stock would have affected them as well.

The court will not exclude option traders from the Class at this time even though they may require separate treatment as a subclass at some point in the litigation. First, even if an option trader does not rely on price when purchasing stock pursuant to the holder's exercise of a put option, the option trader may have relied on the market's integrity in entering into the option contract in the first place, which may have occurred during the Class Period. " 'Traders in puts and calls rely on the integrity of the information disseminated in the market just as do purchasers and sellers of the underlying security.' " *Moskowitz*, 128 F.R.D. at 631 (quoting *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 779 (D.Mass1988)). In addition, the motivation of the various types of purchasers is not to be resolved at the class certification stage of the litigation. *Id.*

### C. *"In-and-Out Traders"*

■ Defendants also object to inclusion in the Class of persons who both bought and sold Valley National stock during the relevant period ("in-and-out" traders) because they would actually have benefited from the alleged fraud. Defendants argue

that such persons would be unable to show they were harmed by the alleged misrepresentations and thus would be unable to assert claims against defendants. Further, defendants argue that even if in-and-out traders suffered losses during this period, the losses would have resulted from factors other than the alleged fraud. Thus, any claims they might have would not be similar to those of the Class representatives.

Plaintiffs assert that the only difference between in-and-out buyers and the Class representatives is in the amount of damages they may be able to prove. In-and-out buyers may suffer damages as the result of failures of disclosure, even if they sell before subsequent disclosures have corrected the artificially high price created by failures to disclose negative information, because the amount of price inflation may vary during the relevant period as the result of other market forces. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1437 (9th Cir.1987). Thus, plaintiffs are correct in characterizing the difference between in-and-out buyers and the Class representatives as being limited to the amount of damages each type of investor may recover. Variances in the amount of class members' damages will not prevent certification of a class. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975). Thus, the inclusion of in-and-out buyers in the proposed Class will not defeat certification of the Class. A subclass of in-and-out buyers may be required at a later point in the litigation, however.

### D. *Investors Who Purchased After September 29, 1989*

■ Defendants contend that plaintiffs have no standing to sue on behalf of Class members who purchased Valley National shares after September 29, 1989, the last day on which any of the Class representatives purchased the stock. Defendants characterize the issue as one of adequacy of Class representatives to represent such purchasers. Defendants rely upon *Ballan*, which held that plaintiffs had no standing to sue on behalf of purchasers who relied

on statements made after plaintiffs' purchase of the stock. *Ballan,* [Current Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 95,669, at 98,135 (citing *In re Investors Funding Corp. of New York Securities Litigation,* 523 F.Supp. 550 (S.D.N.Y. 1980)).

Plaintiffs argue that the Class representatives are adequate representatives with typical claims, because their claims and the claims of those who purchased after them arose from defendants' continuing course of conduct. The Ninth Circuit has held that purchasers injured by similar misrepresentations made over a period of time have a common interest in the action. *Blackie v. Barrack,* 524 F.2d at 902. Thus, the fact that later purchasers may have relied on statements made after the last date on which Class representatives purchased shares would not prevent the claims of both groups of purchasers from being brought in one action. Plaintiffs cite several recent district court cases in which class representatives were allowed to sue on behalf of all persons injured by a scheme of misrepresentations, whether the named plaintiffs bought early or late in the period within which the scheme was in effect. *Nicholas v. Poughkeepsie Savings Bank* [Current Transfer Binder] Fed.Sec. L.Rep. (CCH ¶ 95,606, 1990 WL 145154 (S.D.N.Y. Sept. 26, 1990); *Kamerman v. Steinberg,* C.A. No. 84 Civ. 4440, slip op. at 5, 1990 WL 3247 (S.D.N.Y. Jan. 9, 1990).

Plaintiffs have alleged injury to all persons purchasing Valley National stock after defendants had instituted a scheme to hide the bank's true financial condition (June 30, 1988) until defendants were forced to disclose its true condition on October 18, 1989. Complaint ¶ 34. The grounds for the reliance of investors who purchased stock between September 29 and October 18, 1989, whether actual or presumed, would not have differed greatly from the grounds for the reliance of the Class representatives who purchased earlier in the Class Period. The named plaintiffs may not have standing to sue for harm caused entirely by specific statements made after they had purchased stock. The claims the Class representatives seek to make on behalf of later purchasers, however, do not arise from specific, isolated statements made after September 29, 1988 but rather from a series of alleged interrelated misrepresentations made over the entire relevant period. Thus, the court perceives no problems with standing, adequacy of representation or typicality arising from the inclusion of later purchasers in the Class.

### E. Class Representatives Cooperman and Lord

Class representatives Steve Cooperman and Marion Lord have served as plaintiffs in numerous securities actions in the past. Defendants contend that such "professional plaintiffs" are subject to unique defenses that are atypical of defenses defendants might raise to the claims of other Class members. Furthermore, defendants argue that the attorneys representing Cooperman and Lord in most of the prior actions are the same attorneys seeking to represent the Class in this action. Defendants maintain that, as a consequence of these prior relationships, these representatives lack the necessary independence to adequately represent the Class in this action. Response at 17.

Plaintiffs argue in response that the key question with regard to adequacy of the named plaintiffs' representation is the ability of the attorneys chosen to represent the Class and not the personal attributes of the named plaintiffs. Plaintiffs note that defendants have not challenged the qualifications of plaintiffs' attorneys. Additionally, plaintiffs cite a number of authorities supporting the proposition that prior litigation experience may suggest particular suitability to serve as a class representative or that it is at least irrelevant to adequacy.

Cooperman and Lord may not serve as representatives of the proposed Class. The court agrees with plaintiffs that some prior litigation experience need not handicap a Class representative in representing the class and may even tend to enhance that capability. The prior litigation in which Cooperman and Lord have served as plaintiffs is so extensive, however, that they will

inevitably be subject to unique defenses concerning their reliance on the market's integrity in purchasing stock. Thus, these plaintiffs' claims are not typical of the claims of other class members, nor would these plaintiffs be adequate class representatives.

## III. SUPERIORITY OF CLASS ACTION OVER OTHER METHODS OF AD-JUDICATION

■ Plaintiffs also contend that the claims of the Class can be better adjudicated in a class action than by other methods, and that the Class thus meets the second requirement of Rule 23(b)(3). Plaintiffs maintain that a class action is the only feasible means of adjudication because of the large number of claims, the small size of individual claims, and the high cost of bringing a securities action. Motion at 14.

Defendants argue that a class action is not a superior means of adjudicating the claims of a class that includes in-and-out buyers, institutional investors, option traders [1] and arbitrators, all of whom are subject to unique defenses. Defendants contend that an action brought on behalf of such a Class would be difficult to manage because it would require the formation of subclasses for each of these groups.

The court will not refuse certification of the Class on the ground that the Class includes in-and-out buyers whose damages may need to be determined differently from the damages of other investors. *See Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D.Cal.1986) (allowing problems related to computing damages to defeat certification would only encourage corporations to perpetrate larger frauds with the idea of defeating class certification by raising just such a "spectre of unmanageability"). Furthermore, the court is not convinced that defendants would necessarily raise unique defenses to the claims of institutional investors, arbitragers, or option traders, given the possibility that such investors could establish reliance through the fraud-on-the-market theory, or that raising such defenses would necessarily require the formation of subclasses. Furthermore, the possibility that the subclasses may be required at a later time is not a sufficient basis for refusing to certify the Class. Thus, the court will not refuse certification of the Class based on the mere possibility that some Class members might be subject to unique defenses.

## V. STATE COMMON LAW CLAIMS

■ Defendants contend that the Class should not be certified as to claims of common law fraud and negligent misrepresentation, because individual questions of reliance predominate over any issues common to such claims. Defendants argue that the varying levels of sophistication of the investors, who would have relied on different sources of information before investing, would require different proof of reliance for each type of investor. Further, defendants argue that to prevail on the common law claims, each investor must identify the particular information on which he relied and prove that it was false or misleading. Response at 19 (citing *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 609 (E.D.Mich.1985). Defendants also note that all of the named plaintiffs have testified they did not rely directly on the alleged misrepresentations made by defendants, and the plaintiffs therefore cannot adequately represent the Class to prove the common law claims.

Defendants also argue that these claims would pose serious problems of manageability because they will require the court to apply the laws of the five different states of which various of the named plaintiffs are residents. Defendants cite plaintiffs' deposition testimony in which they denied any contacts with the State of Arizona outside of purchasing these stocks, and stated they bought the stock from out-of-state brokers and had no other contacts with defendants. On that basis, defendants argue the plaintiffs have no contact that might serve as a predicate for applying Arizona law to their common law claims.

---

**1.** Again, the court notes that the Class proposed includes only persons who purchased Valley National stock during the relevant period and not those who purchased options.

Plaintiffs contend that the recent trend in securities litigation is to apply the fraud-on-the-market theory to common law claims as well as to federal statutory claims. Plaintiffs cite several district court cases in which courts certified for class action common law claims that arose from the same fraudulent scheme that formed the basis for the federal cause of action.

Plaintiffs also argue that Arizona law should apply to all common law claims made in this action because of the substantial contacts between Arizona and plaintiffs' claims. Plaintiffs rely on *In re Pizza Time Theatre Securities Litigation*, 112 F.R.D. 15 (N.D.Cal.1986). The court there held that contacts between California and the pendant claims were sufficient to meet the Constitutional requirements established by the Supreme Court in *Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Those contacts included location or residence of the defendant corporation, the underwriters and many of the plaintiffs in California and emanation of the misrepresentations from that state. *In re Pizza Time*, 112 F.R.D. at 18. Defendants note that Arizona is Valley National's principal place of business, the residence of most of the individual defendants, and the place at which the alleged wrongdoing occurred. Plaintiffs also maintain that the court need only determine at this point which state's law is most likely to apply. Reply at 32 (citing *In re Pizza Time*, 112 F.R.D. at 18).

Arizona's law of conflicts requires that the applicable state law be determined under the Restatement's "significant relationships test." *Baroldy v. Ortho Pharmaceutical Corp.*, 157 Ariz. 574, 578, 760 P.2d 574, 578 (App.1988). The relevant inquiry concerns where the injury and the conduct causing the injury occurred, the place of business, incorporation or residence of the parties, and the location of the relationship between the parties. Restatement (Second) Conflict of Laws § 145–146 (2d ed. 1971). Plaintiffs apply these factors to the claims in this case and conclude that Arizona law will most likely apply to all pendant claims.

The court agrees with plaintiffs that Arizona's relationship to the claims in this action are likely to be found more significant than the relationship of any of the other states in which plaintiffs reside or in which they purchased the Valley National stock. Thus, the court would not refuse to certify the state law claims solely on the ground that the court might have to apply the law of several states to those claims.

The court will not certify the Class for prosecution of the state law claims, however, because those claims will require individual proof of reliance under Arizona law. Authorities are split on the question of whether the fraud-on-the-market theory may be used to establish a presumption of reliance in common law claims arising from securities transactions. *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. at 608. Plaintiffs have identified no authority under either Ninth Circuit or Arizona law for application of the fraud-on-the-market theory to the state common law claims. Thus, the court concludes that the pendant claims will require individual proof of reliance and the Class will not be certified for purposes of prosecuting those claims.

IT IS ORDERED granting plaintiffs' motion to certify the Class (Doc. No. 115), except as to the state law claims.

IT IS FURTHER ORDERED certifying the following Class to bring the claims made under federal law:

> All persons who purchased Valley National Corporation common stock from June 30, 1988, through October 18, 1989 (the "Class Period"), and who suffered damages as a result thereof (the "Class"). Excluded from the Class are defendants herein, members of the immediate family of each of the individual defendants, and affiliates, successors and assigns of the individual defendants or of Valley National Corporation.

IT IS FURTHER ORDERED that plaintiffs Cooperman and Lord may not act as representatives of the Class.