Eric WELLING, Ronald Kassover and Charles Gruver III, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

George N. ALEXY, Douglas J. Bartek, William H. Bennett, William D. Caparelli, Michael L. Hackworth, Man Shek Lee, Kenyon Mei, Suhas S. Patil, Robert H. Smith, Sam S. Srinivasan, and Cirrus Logic, Inc., Defendants.

In re CIRRUS LOGIC SECURITIES.

This Document Relates To All Actions.

No. C 93–1591 WHO.

United States District Court, N.D. California.

June 20, 1994.

William S. Lerach, Charles S. Crandall, Milberg Weiss Bershad Hynes & Lerach, Edward M. Gergosian, Kirk B. Hulett, Barrack Rodos & Bacine, San Diego, CA, Ronald J. Clark, Fredric Goldberg, Mika Meyers Beckett & Jones, Grand Rapids, MI, for plaintiffs.

David S. Steuer, Steven M. Schatz, Jerome F. Biern, Jr., Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants.

## OPINION

ORRICK, District Judge.

Plaintiffs' motion for class certification having come before the Court on May 12, 1994, the Court having considered the briefs and having had the benefit of oral argument, and for the reasons set forth below, **GRANTS** in part and **DENIES** in part plaintiffs' motion for class certification.

### I.

Plaintiffs move to certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. They seek to have Ronald Kassover, Eric Welling and Charles Gruver, designated as class representatives. The proposed class period spans from July 20, 1992 through April 26, 1993.

Plaintiffs maintain that during the class period, defendants engaged in a common scheme pursuant to which they made material misrepresentations to and concealed material facts from the investing public. In particular, they allege that defendants were

aware that Cirrus' inventory levels were dramatically increasing, but failed to "write down" such inventory to the market. Additionally, they maintain that defendants were aware that demand for Cirrus' older products was declining.

Plaintiffs allege that, despite their awareness of this information, defendants issued falsely optimistic statements to the market. Plaintiffs argue that this course of conduct caused the price of Cirrus common stock to be artificially inflated, allowing the defendants to sell over 290,000 shares at a profit of over $8.7 million.

Defendants are the officers and directors of Cirrus during the class period, who allegedly had access to adverse, material non-public information. Defendants oppose the motion on the ground that the named representatives are atypical and inadequate to represent the class because: (1) their claims conflict with those of the majority of class members; and (2) they are each subject to "unique defenses" that will cause the claims of absent class members to suffer.

## II.

### A.

#### *Legal Standards*

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) enumerates four basic prerequisites which must be established before any action may be maintained as a class action: (1) numerosity of proposed class members; (2) commonality of issues of fact or law; (3) typicality of named representatives' claims; and (4) adequacy of named representatives and counsel to fairly pursue the action. F.R.C.P. 23(a). In addition, to satisfying these four requirements, two additional requirements must be met to certify a class pursuant to Rule 23(b)(3): (1) questions of law or fact common to the class members must predominate over any questions affecting only individual members, and (2) a class action must be the superior means of adjudicating the controversy.

▪ The moving party has the burden of establishing that its claims are appropriate for class certification under Rule 23. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). The Ninth Circuit has held that securities actions are particularly appropriate for class treatment. *Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *see also In re Worlds of Wonder Sec. Litig.,* [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,004 at 95,626, 1990 WL 61951 (N.D.Cal.1990).

▪ The circuit court, however, has advised district courts to conduct a "rigorous analysis" of the proposed class representatives. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992). In conducting such an analysis, district courts must be careful to avoid reviewing the merits of the underlying action and focus instead on the requirements of Rule 23. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

The four requirements of Rule 23 are discussed in turn below.

### B.

#### *Numerosity*

▪ Rule 23(a)(1) requires that the size of the proposed class be so numerous that joinder of all class members is impracticable. There is no set number cut-off. Courts have approved classes as small as fourteen, *Grant v. Sullivan,* 131 F.R.D. 436 (M.D.Pa.1990), and often between 50–60 members, *see, e.g., Leyva v. Buley,* 125 F.R.D. 512 (E.D.Wash. 1989); *Anderson v. Douglas & Lomason Co.,* 122 F.R.D. 502 (N.D.Miss.1988), but have also refused to certify classes of more than 300 members. *Minersville Coal Co. v. Anthracite Export Ass'n,* 55 F.R.D. 426 (M.D.Pa.1971).

Plaintiffs are unable to give a precise number of class members at this juncture. They maintain, however, that because there were over 25 million shares of Cirrus common stock outstanding during the class period, they will easily satisfy the numerosity requirement.

Defendants do not dispute that this first requirement is met.

## C.

### Common Questions of Law or Fact

■ Rule 23(a)(2) requires that there be questions of law or fact common to the members of the proposed class. The plaintiffs are invoking the "fraud on the market" theory to maintain their action. They allege that the defendants' omissions and misrepresentations were uniformly made to the market, including the class members, in Cirrus' public press releases and filings and in their communications to market professionals. As such, they argue that their claims against the defendants arise out of the same set of operative facts and are based on common legal theories.

Some of the common legal and factual questions arising from the defendants' alleged conduct are: (1) whether Cirrus' public statements during the class period misrepresented or omitted material facts; (2) whether the market price of Cirrus stock was artificially inflated as a result; (3) whether defendants participated in the common course of conduct complained of; and (4) the extent of injuries suffered by class members and the appropriate measure of damages.

The defendants do not dispute that the plaintiffs have satisfied the commonality prong of Rule 23's four part test.

## D.

### Typicality

■ "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). The test "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)). Citing several district court opinions with approval, the Ninth Circuit recently stated in *Hanon:*

> [w]e agree that a named plaintiff's motion for class certification should not be grant-

ed if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991)).

As is discussed in great detail below, the defendants challenge all three proposed class representatives on the ground that they are subject to "unique defenses" given their respective statuses as in/out traders and/or current Cirrus shareholders and, therefore, do not have claims typical to the remainder of the class.

## E.

### Adequacy

■ The final prerequisite to class certification under Rule 23 is that the named plaintiffs constitute adequate representatives of the class. "The adequacy ... requirement of Rule 23 is comprised of two factors: (1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re United Energy Corp.*, 122 F.R.D. 251, 257 (C.D.Cal.1988). "In determining adequacy, the court must scrutinize the ability of the named representatives to represent the interest of the class fairly and adequately." *Id.* (citing *In re Diasonics Sec. Litig.*, 599 F.Supp. 447, 452 (N.D.Cal.1984)); *see also In re Technical Equities*, Fed.Sec. L.Rep. (CCH) ¶ 94,093, 1988 WL 147607 (N.D.Cal.1988); *Weinberger v. Jackson*, 102 F.R.D. 839 (N.D.Cal.1984).

Defendants do not dispute the adequacy of plaintiffs' co-lead counsel Milberg Weiss Bershad Hynes & Lerach and Barrack, Rodos and Bacine. Rather, defendants focus their energies on the ability of the proposed representatives to adequately represent the class citing (1) their lack of knowledge about the case, and (2) their interests that allegedly are antagonistic to the remainder of the class. Because courts frequently discuss the adequacy and typicality prerequisites inter-

changeably, the two factors are applied in combination to each of the plaintiffs below.

### F.

### *Application*

As a backdrop to their opposition, defendants maintain that although courts formerly treated class certification motions in securities cases as a mere formality, courts in this Circuit and elsewhere have begun to apply the adequacy and typicality requirements more stringently. To support this position they cite the Ninth Circuit's ruling in *Hanon,* and, more extensively, Judge Walker's recent opinion, *In re Seagate Technology II Sec. Litig.,* 843 F.Supp. 1341 (N.D.Cal.1994). In *Seagate,* Judge Walker, concerned with potential conflicts between named plaintiffs and class members, refused to certify a class action pending an evidentiary hearing concerning the composition of the class, the amount of price inflation prevailing at different times during the class period, and the extent and severity of the conflicts among class members.

Although the defendants may be correct that these two opinions harken a more aggressive approach in courts' scrutiny of class certification, they overstate their impact on this motion.

### 1. *Proposed Representative Ronald Kassover*

■ Defendants mount three main objections to plaintiff Kassover's suitability as a class representative: (1) his appearance in thirteen other securities class actions; (2) his alleged unfamiliarity with the facts of this case in apparent deference to his longtime securities lawyer, Samuel Sporn; and (3) his status as an "in/out" trader.[1]

This is Kassover's fourteenth appearance as a plaintiff in a securities class action. All fourteen times, he has been represented by the same attorney, Samuel Sporn of Schoengold & Sporn.

In *Hanon,* the Ninth Circuit expressly held that a court may refuse to certify a plaintiff who may be subject to unique defenses. In so holding, the Court identified four factors that weighed against the plaintiff at issue from serving as class representative:

Hanon's reliance on the integrity of the market would be subject to serious dispute as a result of [1] his extensive experience in prior securities litigation, [2] his relationship with his lawyers, [3] his practice of buying a minimal number of shares of stock in various companies, and [4] his uneconomical purchase of only ten shares of stock in Dataproducts.

*Id.* at 508. The Court felt that given the combination of these four factors, Hanon's reliance on the market was questionable. It noted that defense attorneys might have been able to establish that Hanon would have purchased his ten shares no matter what the market price—presumably in an effort to "buy a lawsuit." *Id.* The inference is that a plaintiff buys stock not because it is a strong performer on the market, but rather, to have a "piece of the action" in the event a lawsuit arises.

District courts within the Ninth Circuit have applied the *Hanon* factors in assessing both the adequacy of a proposed class representative and the typicality of his or her claims. For example, in *Shields v. Smith,* [1991–92 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,449 at 91, 967, 1991 WL 319032 (N.D.Cal.1991), Judge Smith refused to certify a plaintiff who had been involved in numerous other securities class actions because she was concerned that this evidence raised the possibility that his motive in buying the stock was "to buy a lawsuit." She held that plaintiff's litigation and trading histories raised "questions concerning the materiality to [plaintiff] of the integrity of the market and his reliance on misrepresentations of [defendants] in making his decision to purchase [defendant's] stock." *Id.* at 91,967–68.

Similarly, in *Hoexter v. Simmons,* 140 F.R.D. 416, 422–23 (D.Ariz.1991), the court refused to certify plaintiffs whose prior litigation experience was so extensive that the

---

1. Because the first two reasons provide a sufficient basis to disqualify Kassover, the Court refrains from discussing the third one at this juncture. The purported conflict created by a trader's in/out status is discussed in detail in connection with proposed representative Welling.

court found that it inevitably would subject them to unique defenses concerning their reliance on the market when purchasing the stock. *See also In re Quarterdeck*, No. CV–92–3970–DWW, 1993 WL 623310 (C.D.Cal. Sept. 30, 1993) (plaintiffs' role as named representatives in other class actions in combination with their lack of knowledge of the facts of the suit and their experience in the market rendered them inadequate class representatives).

Two of the four *Hanon* factors apply to Kassover. There is little doubt that with fourteen appearances, Kassover qualifies as someone with "extensive experience in prior securities litigation." In addition, his reliance on the same attorney, Sam Sporn, in all fourteen lawsuits satisfies the second *Hanon* factor. It does not appear, however, that Kassover has a practice of buying only a small number of shares in various companies in an effort to buy a lawsuit, as the plaintiffs in *Hanon, Shields, Hoexter* and *In re Quarterdeck* apparently did.

One final factor, discussed by numerous courts though not mentioned explicitly in the *Hanon* decision, that dictates against Kassover's adequacy to serve as class representative is his apparent unfamiliarity with the allegations in the amended complaint and the overall status of the proceedings. Courts have held that a class representative who is unfamiliar with the case will not serve the necessary role of "check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit." *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y.1978). Courts have developed a standard of "striking unfamiliarity" to assess a representative's adequacy in policing the prosecution of his or her lawsuit. *See, e.g., Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y.1978).

During his deposition, Kassover failed to exhibit an interest in supervising the attorneys in this case. He stated that his only role in deciding to file the case was to call Sam Sporn immediately after Cirrus' April 26 announcement regarding earnings and tell him he "ha[d] a case for him." [Kassover Dep. at 44, Clark Decl. at Ex. 4]. A complaint was filed within two or three days. [*Id.* at 46.]

Since that initial call, Kassover appears to have ceded control to his lawyers. He performed no further investigation of Cirrus, *Id.* at 45, and his attorneys decided who to name as defendants and what types of claims to bring. *Id.* at 48–49. Kassover was unaware that his lawyers had filed an amended complaint, *Id.* at 50–51, and expressed an intention not to supervise the amount of time spent by his attorneys in prosecuting the case. *Id.* at 64–65.

Such a complete lack of interest in the conduct of the case prompted a court in a prior class action where Mr. Kassover was proposed as a representative to refuse to certify him. *Kassover v. Computer Depot*, 691 F.Supp. 1205, 1213–14 (D.Minn.1987). The court found that Kassover knew nothing about the case and had relied completely on Mr. Sporn to direct the litigation, "rather than competently controlling the course of the litigation." *Id.* The court concluded that Kassover's "abdication of his responsibility for direction of this action creates an unacceptable possibility of conflict of interest." *Id.*

Plaintiffs' counsel attempt to resuscitate Kassover's adequacy by arguing that his experience in past litigation does not rebut the presumption that he relied on the market when he purchased Cirrus stock and may actually serve him well. His background still raises serious questions regarding his suitability to serve as class representative.

Kassover's demonstrated level of disinterest in this lawsuit coupled with his vast experience as a securities class action plaintiff renders him subject to unique defenses and, consequently, inadequate to serve as class representative. *In re Quarterdeck*, No. CV–92–3970–DWW, 1993 WL 623310. Accordingly, to the extent that plaintiffs seek to have Mr. Kassover designated a class representative, plaintiffs' motion is denied.

2. *Proposed Representative Eric Welling*

Defendants challenge Welling's suitability to serve as a class representative given: (a) his status as a sophisticated investor and (b) his status as an in/out trader. Neither of

these challenges is sufficient to preclude Welling's service as class representative.

### a. Welling's Sophistication

■ First, defendants argue that Welling engaged in a flurry of trading during the class period—executing a total of twenty-one separate transactions in just two months, including the purchase and sale of numerous call options. Defendants maintain that because plaintiffs offer no evidence that such a complex trading strategy is common among class members, Welling is atypical and should not be certified. In particular, they argue that Welling is subject to "unique defenses" in that he can be cross-examined about the reasons motivating his complicated trading. Defendants maintain that, it is not clear whether Welling, at times, actually benefited from the price of Cirrus stock going down, rather than up.

To support this aspect of their attack on Welling, defendants cite several recent cases, all holding that the fact that a proposed representative might be vulnerable to unique defenses weighs against certification. *See, e.g., Hanon,* 976 F.2d at 508; *Hoexter,* 140 F.R.D. at 422–23; *Rolex Employees Retirement Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 664 (D.Or.1991); *In re Quarterdeck,* No. CV–92–3970–DWW, 1993 WL 623310, *5.[2] A review of these cases reveals, however, that sophistication alone is not sufficient to bar a trader from serving as class representative. Rather, courts look for sophistication in combination with other factors indicating that the trader did not rely on the market. Such factors include prior participation in securities class actions, purchase of a *de minimis* number of shares, access to insider information and a trader's unfamiliarity with the facts of his or her lawsuit.

In the absence of these contributing factors, courts have generally held that a trader's sophistication does not preclude him or her from serving as class representative, unless he was a largely speculative trader. *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975) ("Differences in sophistication, etc., among purchasers have no bearing in the

impersonal market fraud context...."); *Church v. Consolidated Freightways,* [1991 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,162, 1991 WL 284083 (N.D.Cal.1991) ("[D]ifferences in the amount of damage, the size or manner of purchase, the nature of the purchaser ... does not render a claim atypical in most securities cases."); *In re Worlds of Wonder Sec. Litig.,* [1989–90 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,004, 1990 WL 61951 (N.D.Cal.1990) (same); *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 112 F.R.D. 383, 387–88 (S.D.N.Y.1986) ("The securities laws afford protection to all investors, both sophisticated and unsophisticated."); *but compare Kline v. Wolf,* 88 F.R.D. 696, 699 (S.D.N.Y.1981) (refusing to certify plaintiff where evidence showed he was a speculator); *Model Assoc., Inc. v. U.S. Steel Corp.,* 88 F.R.D. 338, 340 (S.D.Ohio 1980) (same).

Here, Welling's deposition supports his argument that he relied on the market when deciding to purchase Cirrus stock and refutes any characterization of him as a speculative trader. He testified that he invested in Cirrus upon his broker's recommendation that "[Cirrus] was an excellent company" with the expectation that the stock would experience "growth, long-term, nonspeculative." [Welling Dep. at 24–25, Clark Decl. at Ex. 5.] In addition, while Welling did engage in a rather complex trading pattern, defendants overlook the fact that he also continued to hold 2,000 shares of common stock at the close of the class period.

Finally, courts in this district have warned that it is improper to review a plaintiff's motivation in purchasing stock at the certification stage. *See, e.g., In re Technical Equities* Fed.Sec.Litig., [1988–89 Tr. Binder] Fed. Sec.L.Rep. (CCH) ¶ 94,004 (N.D.Cal.1988) (Court declined to "delve into the subjective intent of the named parties....").

For these reasons, Welling's purported sophistication as a trader does not disqualify him from serving as class representative.

---

**2.** The holding in *Hoexter* actually supports the plaintiffs' position that a trader's purchase of call

options does not disqualify him from serving as a class representative. 140 F.R.D. at 421.

**b. Welling's In/Out Trader Status**

Next, defendants argue that Welling's status as an in/out trader bars him from serving as named plaintiff.

An in/out trader is one who both purchases and sells stock during the same period of alleged price inflation. Unlike the typical "retention" trader who holds his or her securities throughout the class period, an in/out plaintiff recoups at least some of the loss incurred by the purchase because he both buys and sells during the period of price inflation. Thus, in awarding damages, a court will subtract from his calculated injury upon purchase, the amount of his recoupment at the time of sale.

For this reason, the in/out plaintiff will argue that the stock was fully inflated when purchased, but not inflated on the date of his sale. In so doing, the in/out plaintiff will maximize damages. A retention plaintiff, buying on the same date that the in/out plaintiff sells, has the exact opposite interest—such a plaintiff benefits by proving that the price inflation continued in full force on the date the shares were purchased. Under this scenario, the interests of the in/out plaintiff and retention plaintiff collide. *See generally Seagate II,* 843 F.Supp. at 1359–62.

As a result of the method of calculating damages in a Rule 10b–5 fraud on the market case, defendants maintain that an in/out trader like Welling is economically motivated to shape the evidence of price inflation differently from other class members. Welling will recover greater damages by minimizing the price inflation at the date of his sale because that reduces the money received from the sale, and, accordingly, the amount by which he will have to setoff his purchase loss.

In addition, defendants maintain that an in/out trader like Welling is an inadequate class representative for a separate reason. They argue that because Welling sold portions of his Cirrus shares before the end of the class period, serious questions arise regarding his reliance on the allegedly material misrepresentations made by Cirrus. If, as the complaint purports, the class was fooled into purchasing Cirrus stock until the disclosure of accurate, but adverse information at the end of the class period on April 26, 1993, then it appears that Welling was not duped because he sold much of his Cirrus stock before the late April disclosure.

To support their theory regarding in/out traders, defendants rely on a series of recent cases holding that a plaintiff who may be subject to unique defenses is not an appropriate class representative. For example, in *Hanon,* the Ninth Circuit affirmed a district court's denial of class certification, stating:

> Several courts have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'
>
> We agree that a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'

*Hanon,* 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp.* at 180); *see also In re Quarterdeck,* No. CV–92–3970–DWW, 1993 WL 623310, *3 ("The presence of these unique defenses is an adequate ground for denying a motion to certify a class action if class representation will suffer because the named plaintiffs are preoccupied with combatting unique defenses."); *Hoexter v. Simmons,* 140 F.R.D. 416, 422–23 (D.Ariz.1991) (same); *Rolex Employees Retirement Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 664 (D.Or.1991) (same).

In *Seagate II,* Judge Walker exhaustively reviewed the problems caused by the presence of in/out traders in a class. He refused to certify a class until an evidentiary hearing could be held to determine the impact that the presence of both in/out and retention traders has on the reliance, materiality and proximate cause elements of the fraud on-the-market theory. *Id.* at 1358–59. He recognized, however, that the vast majority of courts which have addressed the in/out trader issue have permitted certification, noting "[t]his seller-purchaser conflict has been raised by numerous courts, usually to no avail." *Id.* at 1359.

Indeed, as the plaintiffs are quick to emphasize, the Ninth Circuit has upheld the

certification of classes containing both in/out and retention traders. In *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), the court held that potential conflicts between purchasers who hold throughout the class period and those who sell during the class period do not preclude certification. The court stated that such conflict is a matter of damages:

> We agree that class members might at some point during this litigation have differing interests. We altogether disagree, for a spate of reasons, that such potential conflicts afford a valid reason at this time for refusing to certify a class.

*Id.* at 908.

In addition, the Ninth Circuit has repeatedly held that in/out traders suffer damages under the fraud-on-the-market theory as do other types of traders. In *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1437 (9th Cir.1987), the court noted:

> [b]ecause market forces are independent of corrective disclosures, an in-and-out trader ... may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures.

The court further held in *Wool* that the out-of-pocket rule provides that the recoverable damages are the difference between the stock purchase price and the value of the stock on the date of purchase. *Id.* at 1437. Therefore, as the plaintiffs point out, because Welling purchased Cirrus stock at an inflated price, he has suffered cognizable damages even though some of those damages may be set off by the profit he made by selling some of the same stock during the same period of price inflation.

District courts throughout the Ninth Circuit have similarly certified in/out traders as class members and representatives. In *Schwartz v. Harp,* Judge Rymer rejected defendants' challenge to a proposed class representative based on the alleged conflicts his status as an in/out trader would create. 108 F.R.D. 279 (C.D.Cal.1985). Citing the Ninth Circuit's opinion in *Blackie,* Judge Rymer noted that "[while] the early seller's damages may be reduced ... his standing to sue is not affected nor is his status as a representative plaintiff of a class of all purchasers throughout the period." *Id.* at 282.

Similarly, in *Shields v. Smith,* Judge Smith held that "typicality does [not] require uniformity of damages" and the fact that one proposed representative sold part of his stock before the end of the class period "does not, in and of itself, affect his standing as a class representative." 1992 WL 295179, *4, 1992 U.S.Dist. LEXIS 15718, *13 (N.D.Cal. Aug. 19, 1992). *See also Sherman v. Widder,* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,054, 1994 WL 159450 (S.D.Cal.1994); *Hoexter,* 140 F.R.D. at 421 (difference between in-and-out buyers and other class members was limited to damages and did not prevent certification).

Additionally, it should be noted that although Welling did sell some of his Cirrus stock before the end of the class period, he also continued to hold 2,000 shares up to the close of the class period. Indeed, he sold this stock at the end of April at a loss of over $26,000 dollars. Mr. Welling's status as a combination in/out and retention trader, therefore, minimizes the potential conflicts between him and other class members that the defendants claim will arise. As a shareholder who sold some of his Cirrus stock during the class period, but held the majority of it until after the close of the period, it is in Welling's best interest to demonstrate that the price of Cirrus stock was inflated throughout the class period. Such a strategy will be to the benefit of all class members.

The Court certifies Welling as a class representative.

3. *Proposed Representative Charles Gruver*

 Finally, defendants have two complaints regarding plaintiff Gruver's adequacy to serve as class representative and the typicality of his claims. First, they argue that as a current shareholder of Cirrus, Gruver's interests irreconcilably clash with those of his fellow class members who sold their stock during or shortly after the class period. Gruver still holds 700 shares of Cirrus stock. Defendants maintain, given his equity interest in Cirrus, Gruver is not economically motivated to maximize the damages paid out

to former shareholders because it adversely affects his investment. In contrast, former shareholders are interested in obtaining the maximum possible recovery. Gruver's divided loyalties, defendants insist, make him inadequate to serve as a class representative.

Second, and as a matter of policy, the defendants urge that Gruver should not be permitted to participate in a class action because he has profited handsomely from his Cirrus stock—earning over 50% (on paper) on his investment in one year. They maintain that if big winners like Gruver are permitted to file class actions, then any investor should file a lawsuit as a matter of course because he might recoup even more money through a settlement.

These two arguments found a welcome audience in Judge Walker in *Seagate II*, who cited the conflict of interest caused by the presence of current equity holders in the class, as one reason for refusing to certify until an evidentiary hearing could be held. He concluded that the divided loyalties of current shareholders, who on the one hand hope for recovery for themselves but as equity holders also wish to minimize the overall liability of the company, were too serious to overlook. *Seagate II*, 843 F.Supp. at 1362–64.[3]

Once again, however, Judge Walker forthrightly acknowledged that "defendants have had little success in preventing class certification on the basis of this 'equity' conflict." *Id.* at 1362. Indeed, most courts addressing the issue have found that the current equity holder's self interest in personal recovery adequately outweighs any concern that she might have regarding the impact an award of damages would have on the company. *See,*

*e.g. Jenson v. Continental Fin. Corp.,* 404 F.Supp. 806, 811 (D.Minn.1975); *Simon v. Westinghouse Elec. Corp.,* 73 F.R.D. 480, 484 (E.D.Pa.1977); *Greene v. Emersons Ltd.,* 86 F.R.D. 47, 61 (S.D.N.Y.1980).

As such, the weight of authority supports Gruver's adequacy to serve as a class representative.

Accordingly,

**IT IS HEREBY ORDERED** that pursuant to Rule 23, plaintiffs' motion for class certification is **GRANTED** in part and **DENIED** in part and a plaintiff class is hereby certified as follows:

1. The class is defined as all persons who purchased the common stock of Cirrus Logic, Inc. during the period from July 20, 1992 through April 26, 1993, excluding the defendants herein, officers or directors of Cirrus, members of the individual defendants' immediate families, any entities in which any defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded party.

2. Plaintiffs Eric Welling and Charles Gruver are certified as class representatives. Plaintiff Ronald Kassover may not serve as a class representative.

---

**3.** In addition, the defendants argue that a recent Ninth Circuit opinion, *In re First Capital Holdings,* 19 F.3d 470 (1994), endorses the idea that a class member who suffered no loss may not have standing under Article III to even object to a class settlement because he has not "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." 19 F.3d 470 (9th Cir.1994). The plaintiffs are correct, however, when they urge that *In re First Capital Holdings* is distinguishable. In that appeal, the appellant was contesting the award of attorneys' fees in connection with settlement of litigation arising out of the sale of life insurance

policies and annuity contracts. The Ninth Circuit found that the appellant had no standing because she had cashed in her annuity contract and defendants paid her everything they were contractually obligated to pay. In contrast, the plaintiffs argue, Mr. Gruver will be able to trace injury to challenged conduct of the defendants in the form of inflated stock price and show that he sustained damages as a result. In sum, even though Mr. Gruver may realize a profit when he ultimately sells his Cirrus stock, that profit would be greater if he had not bought at an inflated price.